## 65925. LAWSON et al. v. B. P. CONSTRUCTION, INC. et al.

BIRDSONG, Judge.

Future Profits—Breach of Contract. B. P. Construction, Inc. (B. P.) entered into a contract with the U. S. Army to refinish and renovate certain family quarters at Fort Benning. Part of the renovation work included the refinishing of floors. B. P. subcontracted the floor refinishing work to Lawson Floor Covering Co. (Lawson). The main contract between B. P. and the Army was never introduced into evidence, but apparently B. P. agreed to renovate as many sets of quarters as were surrendered to it by the Army post authorities at Fort Benning. In its subcontract with Lawson, B. P. estimated that approximately 644 squares (a square being 100 square feet of floor) would be refinished. Lawson undertook to perform its subcontract, but a dispute arose as to the quality of work being performed by Lawson. After the completion of 255.87 squares, B. P. informed Lawson that it was dissatisfied with Lawson's performance, terminated the contract, and B. P. thereafter completed all floor work remaining to be done on the contract.

Lawson established that the contract price for each square was $35. Lawson encountered $20.60 in labor costs for each square, thus realizing $14.40 profit on each square it completed. There is no dispute that Lawson was fully compensated for the 255.87 squares which it finished. In its complaint, Lawson sought to recover lost profits for the squares it was denied the right to finish because of B. P.'s termination of the subcontract. In its complaint Lawson initially sought lost profits of $35 per square for 384.13 squares (the difference between the estimate of 644 and the 255.87 squares Lawson completed before termination), or $13,444.55. However, considering Lawson's costs of $20.60 per square, the original demand for $13,444.55 was misleading and more properly should have been alleged as $5,531.47 (384.13 × $14.40). In its effort to establish the number of squares that actually were completed during the performance of the entire contract, Lawson sought to show that its owner, Mr. Bone, had perused contract documents located at Fort Benning and Mr. Bone determined that 1,135 squares had been completed per the contract documents. However, Mr. Bone did not have those contracts or figures nor did he offer the documents into evidence. Upon motion of B. P., the evidence of 1,135 squares was stricken from evidence and the jury instructed to disregard the evidence. At this point in the trial, Lawson had offered as the amount of its claim $13,444.55 (344.13 × $35), $5,531.47 (344.13 × $14.40) and $12,659.47 ((1,135 − 255.87) (879.13 × $14.40)) as the amount of lost profits.

At the conclusion of the plaintiff's (Lawson's) evidence, B. P. moved for a directed verdict on the ground that any lost profits accruing to Lawson were too speculative for the jury to arrive at a definitive figure. The trial court granted B. P.'s motion for directed verdict. Lawson brings this appeal urging error by the trial court in striking from the jury's consideration the evidence that 1,135 squares had been completed and that the evidence of lost profits was too speculative to authorize a jury verdict. *Held:*

1. In its first enumeration of error, Lawson complains that the trial court erroneously struck from the jury's consideration evidence that 1,135 squares ultimately had been refinished during the life of the contract. In context, the evidence offered by Mr. Bone when initially presented to the jury was a simple statement of fact that 1,135 squares had been refinished. No objection was made to that evidence and on its face, the information appeared to be based upon Bone's personal knowledge. Upon cross-examination, it was developed that Mr. Bone had determined the number 1,135 from records available in a business office at Fort Benning and Bone had no personal knowledge as to the fact. The records were not available in court; thus, Bone could only testify as to his recollection of the contents of the documents. Lawson, not having finished any squares after the first 255.87, made no showing as to how Lawson or Bone would have known how many squares B. P. refinished thereafter.

Our perusal of the transcript shows us that Bone's testimony did not reflect its hearsay nature until cross-examination by B. P. As soon as the hearsay character of the testimony became apparent, B. P. made motion to strike. ". . . [I]f the evidence was admissible when offered and later appears to be inadmissible the complaining party may prevent its inclusion in the evidence by making a motion to strike or rule it out at that time." *Brown v. Techdata Corp.,* 238 Ga. 622, 628 (234 SE2d 787). We find no error in the action of the trial court striking this portion of Bone's testimony. Particularly is this true considering that hearsay evidence as such has no probative value and cannot be considered to sustain a verdict. *Longstreet v. Longstreet,* 205 Ga. 255 (4) (53 SE2d 480).

2. In its second enumeration, Lawson urges error in the grant of a directed verdict on the ground that Lawson had not proved ascertainable lost profits. After the trial court had ordered stricken from the jury's consideration the fact that apparently 1,135 squares had been refinished, Lawson sought to show that the subcontract called for 644 squares and that because Bone believed more than 644 squares had been completed, it (Lawson) was willing to accept a final figure of 644 less the 255.87 admittedly completed.

We continue to experience difficulty in accepting 644 as a firm final figure, obviously as did the trial court. Mr. Bone could establish without question only the figure of 255.87 squares when the trial court excluded any reference to the documents at Fort Benning showing the actual number of squares completed. We can find no other reliable evidence in the transcript of the final figure. So far as we observe, nothing remained except Bone's opinion (apparently unsupported) that more than 644 were completed. It appears clear from references to it that the contract between B. P. and Fort Benning contemplated that family quarters on the military reservation would individually be surrendered to B. P. and that these quarters would be renovated as surrendered. The subcontract between B. P. and Lawson further reflects that the number of quarters to be renovated was of an uncertain quantity. Thus the subcontract called for the refinishing of 644 squares, more or less, indicating that figure at best as an estimate. In the absence of competent evidence that a certain number of squares was in fact completed, the jury could have no way of knowing that some number greater than 255.87 but less than 644 or more than 644 squares was in fact refinished. Thus even though the jury was aware that Lawson would suffer a profit loss of $14.40 for each square refinished under the contract, the jury was presented no competent evidence of the number of squares to which to apply the figure of $14.40.

" 'The actual damages which will sustain a judgment must be established, not by conjectures or unwarranted estimates of witnesses, but by facts from which their existence is logically and legally inferable. The speculations, guesses, estimates of witnesses, form no better basis of recovery than the speculations of the jury themselves. Facts must be proved, data must be given which form a rational basis for a reasonably correct estimate of the nature of the legal injury and of the amount of the damages which resulted from it, before a judgment of recovery can be lawfully rendered.' . . . While appellee was not required to prove its damages to the exact dollar, it was required to provide some rational basis of computation. . . . This it failed to do." *Tri-State Systems v. Village Outlet Stores,* 135 Ga. App. 81, 85 (217 SE2d 399). The appellant having failed to prove any fixed and ascertainable lost profits as damages (as well as seeking to claim or prove lost profits in three or more conflicting amounts), the trial court did not err in directing a verdict for B. P.

*Judgment affirmed. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED MAY 12, 1983 —
REHEARING DENIED MAY 26, 1983 — ■■■■■■■

*Alan Neil Frandsen,* for appellants.
*Harry P. Dicus,* for appellees.