A92A2083. HOUSTON et al. v. KINDER-CARE LEARNING CENTERS, INC. et al.

(430 SE2d 24)

ANDREWS, Judge.

John Houston, Jr., a minor, through his parents and guardians, appeals the judgment entered on a jury verdict for defendants Kinder-Care Learning Centers, Inc. and two of its former employees, Ms. Holley, John's teacher when he was two years old, and Ms. Moore, who was the Center Director.

Viewed in favor of the jury's verdict, the evidence was that John was a low birth weight baby whose mother suffered from toxemia during the last month of her pregnancy. At the age of six weeks, John was enrolled in the infant program at Kinder-Care.

Defendant Holly had worked for Kinder-Care since 1979, starting as a teacher's aide and becoming the teacher for the toddlers. In early 1986, John was in her toddler class for a month or two until she was transferred to teach the two-year-old class. At the age of two, John joined this class. John was a very demanding child who became aggressive with other children, sometimes spitting and hitting them. He also was extremely active and disruptive of class and was difficult to calm. The policy of Kinder-Care was that spanking was not allowed, but the use of "time-out" was. The child could be separated from the other children, usually by being placed in a chair in a corner. The child was always to be within the sight of the teacher and able to see the other children.

As John became more aggressive and demanding, he was being placed in time-out. Holley attempted to use the standard time-out procedure of a chair in a corner, but John's actions made this unfeasible. In one corner, he played in the water fountain and in another he ran outside through the nearby door. When Holley attempted to talk to him concerning his behavior as he sat in the chair, he would kick, hit, spit, and scream at her, which caused the remaining ten or eleven two-year-olds to gather to see what was happening. In an effort to

control John and cause as little disruption as possible to the rest of the children, in late January 1988 Holley began to use the bathroom between the two-year-old room and the infants' room for time-out. She would place John in a chair immediately inside the bathroom door. Then, she would lean against the water fountain outside the door to the bathroom, hold the door open with her foot so that John could not pinch his fingers in it and could see and listen to her, and attempt to calm him down. She did not completely close the door and the lights remained on. From this position, she could both talk to John and observe the remainder of the class. Occasionally, when Mrs. Houston would come to pick John up, he would be in the bathroom and she did not question Holley about this.

Because of the layout of the center, Moore, the director, could hear any disruptions. She was aware of Holley's use of time-out with John and had heard him crying once when he was placed in time-out. In three months, she may have seen this on three occasions. She was not concerned about the procedure because John was safe and being observed and was in view of other teachers in the center.

John sometimes suffered nightmares during his naps and was afraid of loud noises and strangers. Mr. Houston disciplined John with a belt and, according to John, had spanked him with a book before.

In May 1988, John was placed in the three-year-old class with another teacher with the hope that placing him in a larger room with older children would help his behavior. He was improving when his parents removed him from Kinder-Care.

Mrs. Houston said she was aware of this use of the bathroom because she had been contacted by Campbell and Leverette, two former employees of the center. Campbell worked there in 1987 and was terminated for leaving her class in the middle of the day. Leverette was hired in January 1988 and terminated in July 1988 because she asked another teacher to spank a child for her. Campbell's testimony concerning John being shut in the bathroom was, at best, equivocal and she acknowledged that she never reported any alleged misconduct by Holley to anyone at the center. While Leverette did testify that John would be placed in the bathroom and Holley would turn off the light and shut the door, placing her foot against it, she acknowledged that, from her vantage point in another classroom, she could not see into the bathroom and that the door may have been open.

After leaving Kinder-Care, John was placed in La Petite, another day care center, which refused to continue to keep him after 30 days. His parents took him to see a counselor who referred them to Dr. Hazard, a clinical psychologist. She evaluated John, including administering psychological tests, in December 1988. She also spoke to his teacher at Children's World which he was then attending. They

reported a very short attention span and need for extra attention. Dr. Hazard diagnosed John as suffering from Attention Deficit Hyperactivity Disorder and attributed his behavior problems to that. She recommended medication, which the parents rejected.

While John was attending public kindergarten in Georgia, his parents refused referral to the school support team for evaluation. After moving to Texas and entering first grade, John was suspended because he attempted to poke another child in the eye with a pencil.

John received no counseling or treatment for a year and then was seen by another clinical psychologist, Dr. Ude, beginning in the fall of 1990 and continuing through April 1991. Dr. Ude was aware of the incidents at Kinder-Care but was not advised by the parents of the other day care problems. He did not conduct any testing, but concluded after interviewing John once in October 1990 that the child suffered from Post Traumatic Stress Disorder which he attributed to the trauma suffered from the time-out procedure.

John, who was seven at the time of the trial in February 1992, testified that he could not presently remember being shut in the bathroom.

Suit was filed in July 1990 alleging claims for negligence, breach of contract, false imprisonment, assault and battery, cost of ongoing medical care, punitive damages and attorney fees.

1. The first two enumerations complain of the court's refusal to admit a statement by Kinder-Care's regional manager which the Houstons contend was an admission of liability and the court's limiting of plaintiff's examination of the regional manager.

After John was removed from Kinder-Care, Mrs. Houston wrote a letter complaining of his being shut in the bathroom. She was contacted in April 1989 by Grant of Kinder-Care who informed her he was investigating her complaints. Then, in June and July, she met with Tucker, who became the new regional manager of Kinder-Care in March 1989. Prior to trial, defendants made a motion in limine to exclude Tucker's statement made at the July meeting as an "admission or proposition made with a view to a compromise" under OCGA § 24-3-37. The court granted that motion. The proffer made by plaintiffs during the argument on the motion was that Tucker asked "What is it going to take to make you folks happy?"

Although the motion excluding the statement was granted and Mrs. Houston was in court at that time, during her direct testimony, in response to a question about where the second meeting with Tucker had taken place, she stated: "At McDonald's again. He came in and he was more of a — I told him, . . . you are not acknowledging the fact what has happened to my child. You are talking about reconstructing, reorganizing and your investigation, you know. This is happening. I don't want this to happen to any other children . . . And he

went on and he said — he looked into the papers and he came back and he asked me — he asked me — he said, what would it take —." At this point, defendants' objection was sustained, although their motion for mistrial was denied.

After defendants rested, plaintiffs, as rebuttal, called Tucker as their witness for purposes of cross-examination. Tucker testified that he was involved "in the attempt to resolve . . . [their] concern" and that "I was responsible for reviewing the investigation and determining the liability."

After further describing the investigation he conducted, Tucker was asked "Did you make any decision about your center's responsibility based on that investigation?" Defendants again objected, at which point the question was withdrawn by plaintiffs. At that point, defense counsel asked to have the jury removed to discuss the entire line of questioning. Then, the following transpired: Plaintiff's counsel Mr. Ford: "Your honor, I respectfully except to that. Mr. Tucker, . . . said that his purpose in conducting an investigation was to find out what happened and determine — The court: Counsel, let me suggest to you that none of it has anything to do with whether or not there was any negligent acts or whether or not there was any — Mr. Ford: Yes sir, but it does. The court: Just a moment. Mr. Ford: I'm sorry. The court: That's the problem. That's why we waste so much time. We are inquiring about matters that don't make any difference. Mr. Ford: Your honor, I respectfully — The court: And you are about to get into trouble — Now I have ruled on this matter and I have dealt with it enough and I'm not going to say anything else about it now. Mr. Ford: I would — could I be heard? The court: No, sir, just move forward."

Even assuming that the asking of a question, as was done by Tucker, can ever be taken as an affirmative admission, the court's attempted exclusion of this testimony was appropriate. " 'There is a distinction between an offer or proposition to compromise a doubtful or disputed claim, and an offer to settle upon certain terms a claim that is unquestioned. An admission made in an offer to settle will be admissible while one made in an offer to compromise will not be admissible. (Cits.)' *Charter Mtg. Co. v. Ahouse*, 165 Ga. App. 497 (1) (300 SE2d 328) (1983). In *Charter Mtg. Co.*, this court held that an unsolicited offer to settle for the full amount of the original claim was admissible. In the present case, it is clear from the record that the [statement] was an [effort to explore] an offer to compromise a claim which was still being disputed. . . ." *DeKalb County v. Daniels*, 174 Ga. App. 319, 320 (4) (329 SE2d 620) (1985). Compare *Turner Broadcasting System v. Europe Craft Imports*, 186 Ga. App. 286, 289 (3) (367 SE2d 99) (1988).

Further, even if incorrect, the ruling was effectively circumvented

by plaintiff during the testimony of Mrs. Houston and, therefore, any error would have been harmless.

There was no violation of OCGA § 9-10-7 as contended by plaintiffs. *Starks v. Robinson*, 189 Ga. App. 168, 169 (2) (375 SE2d 86) (1988).

2. Error is enumerated for the court's allowance of evidence in violation of OCGA § 24-2-2, dealing with other transactions.

Gail Garrett was a teacher at Kinder-Care from May until August 1987 and from February 1988 until April 1989. She would substitute in the two-year-old class when Ms. Holley was absent and she was familiar with John Houston as a student in that class. She was asked a series of questions about her experience with John and then asked if she had an opportunity to observe Holley with the two-year-old classroom and if she had ever seen her lose control with the children. This question was objected to because "I think she is going to start asking this witness about what she saw Diane Holley do and other transactions."

Certainly, any observations of Holley's conduct in John Houston's class were relevant and material to the issue of her alleged mistreatment of him.

Teachers who were present in other classrooms nearby during the times John was placed in time-out testified to the absence of the screaming and banging on the door to which plaintiffs' witnesses had testified. This evidence was likewise relevant and admissible. OCGA § 24-2-1.

There was no error. *Carsten v. Wilkes Supermarket &c.*, 181 Ga. App. 834 (1) (353 SE2d 922) (1987).

3. Finally, the Houstons complain of the granting of defendants' motion for directed verdict on their count alleging assault and battery.

" ' "In the interest of one's right of inviolability of one's person, any unlawful touching is a physical injury to the person and is actionable (as a battery)." (Cits.)' *Newsome v. Cooper-Wiss, Inc.*, 179 Ga. App. 670, 672 (1) (347 SE2d 619) (1986)." *Haile v. Pittman*, 194 Ga. App. 105, 106 (3) (389 SE2d 564) (1989).

There was no evidence here of any touching other than that which had been contracted for when the Houstons placed their infant in the care of Kinder-Care. The use of time-out as a disciplinary tool was within the guidelines of Kinder-Care and was so used with John. There was no error in the grant of the directed verdict on this count.

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED FEBRUARY 23, 1993 —
RECONSIDERATION DENIED MARCH 30, 1993

*Davis, Price & Young, Richard M. Young, Ford & Haley, James L. Ford*, for appellants.

*Drew, Eckl & Farnham, W. Wray Eckl, Elizabeth C. Helm*, for appellees.