A92A2084. JOHNSON v. METROPOLITAN ATLANTA RAPID
TRANSIT AUTHORITY et al.
A92A2085. METROPOLITAN ATLANTA RAPID TRANSIT
AUTHORITY v. JOHNSON.
(429 SE2d 285)

BLACKBURN, Judge.

Allan B. Johnson, Jr., was employed by MARTA for 14 years, first as manager of procurement and then as director of contracts and procurement. He resigned his position in July 1989, following a determination by MARTA that his wife's acceptance of a position with IBM in February 1989 created a conflict of interest which required debarment of any further contracts with IBM. Subsequently, Johnson commenced this action alleging breach of contract, promissory estoppel, misrepresentation, intentional infliction of emotional distress, and violation of equal protection and due process, against MARTA only; and tortious interference with contract, and public disclosure of private facts, against the members of the MARTA Board of Ethics.

The trial court granted summary judgment for the defendants on all counts, except for the claim for intentional infliction of emotional distress. However, a jury returned a verdict for MARTA on that claim when the matter proceeded to trial. Johnson now appeals from the judgment entered on that jury verdict, the grant of partial summary judgment for the defendants, and the denial of his own motion for summary judgment. In its cross-appeal, MARTA attacks the denial of summary judgment on the claim for intentional infliction of emotional distress.

The nature of Johnson's employment with MARTA subjected him to compliance with MARTA's Code of Ethics governing, inter alia, conflicts of interest. That Code prohibits MARTA from contracting with any business in which an employee has an interest. Under that Code, an employee is deemed to have an interest in transactions involving an immediate relative, including a spouse.

In February 1989, IBM offered Johnson's wife a one-year position as an independent contractor to assist in development of demonstrations and orientation of prospective users of classroom computer systems. IBM was a major contractor with MARTA, and, although his wife's hiring and responsibilities were unrelated to any transactions between MARTA and IBM, Johnson sought guidance from the MARTA Board of Ethics regarding the propriety of his future participation in any matters pertaining to computer systems, out of concern for the appearance of a conflict of interest. On March 6, 1989, that Board concluded that Johnson had an "interest" in his wife's employment with IBM within the meaning of the Code of Ethics, and recommended debarment of further contracting with IBM. Johnson appeared before the Board seeking reconsideration, but the Board

affirmed its earlier determination that a potential conflict existed.

Consequently, Johnson relieved himself of any further duties of the nature covered by the Code of Ethics, effective April 1, 1989, and used his accrued vacation time. Ultimately, on July 21, 1989, he resigned his position with MARTA. In his letter of resignation, Johnson expressed his belief that the opinion of the Board was an honest interpretation of the Code of Ethics, but protested MARTA's change in position regarding whether a conflict of interest arises from the mere employment of an immediate relative with another company that does business with MARTA.

1. Johnson claims that until he reported his wife's employment with IBM, MARTA's applied policy had been that mere employment, with no management or ownership interest in the contractor, of an immediate relative of a MARTA employee did not present a conflict, so long as neither MARTA nor its employee assisted the relative in getting the job, and the relative was not involved with or compensated because of the contractor's transaction with MARTA. He contends that he was advised of that policy upon his specific inquiry when he first became employed with MARTA, and that the policy constituted an integral term of his employment contract with MARTA. His claims for breach of contract, promissory estoppel, and misrepresentation are all based upon MARTA's alleged application of a different policy with regard to his wife, which ultimately forced his resignation in order to prevent debarment of IBM from contracting with MARTA and to save his wife's job.

It is undisputed that Johnson's employment with MARTA was for an indefinite term, and for that reason was terminable at the will of the employer, with no resulting cause of action for breach of contract. OCGA § 34-7-1, generally; *Borden v. Johnson*, 196 Ga. App. 288 (395 SE2d 628) (1990); *Murphine v. Hosp. Auth. of Floyd County*, 151 Ga. App. 722 (261 SE2d 457) (1979). We recognize that Johnson's action is not one for wrongful discharge, but instead seeks redress for MARTA's alleged failure to honor the terms of his employment contract. However, the nature of Johnson's employment with MARTA similarly disposes of his claims based on that theory.

Specifically, because Johnson's employment was terminable at will, MARTA was authorized to alter the terms of his employment. *Taylor v. AMISUB, Inc.*, 186 Ga. App. 834 (368 SE2d 791) (1988). The doctrine of promissory estoppel codified at OCGA § 13-3-44 (a) has no application to enforce executory promises pertaining to employment for an indefinite term. See *Barker v. CTC Sales Corp.*, 199 Ga. App. 742 (406 SE2d 88) (1991). Also, any promises upon which Johnson may rely to show misrepresentation are unenforceable because his underlying employment contract, being terminable at will, was unenforceable. *Taylor v. AMISUB, Inc.*, supra at 836. Accord-

ingly, the trial court properly granted summary judgment for the defendants on Johnson's claims for breach of contract, promissory estoppel, and misrepresentation.

In contending that MARTA's earlier policy defining conflicts of interest was an enforceable term of his employment, Johnson misplaces his reliance upon *Fulton-DeKalb Hosp. Auth. v. Metzger*, 203 Ga. App. 595 (417 SE2d 163) (1992). In *Metzger*, at the time the employee at will was hired, the employer's personnel handbook provided for payment of full salary in case of injury on the job, but subsequently the handbook was amended to reduce those benefits. This court found that the compensation terms contained in the original handbook remained in effect for the employee, in accordance with an established rule that an additional compensation plan offered by an employer and accepted by an employee constitutes a separate contract between them. *Metzger* thus involved enforcement of contracted-for compensation benefits, and does not stand for the proposition that an employer at will may not alter the terms of such employment.

2. When the MARTA Board of Directors adopted its Code of Ethics, it created a Board of Ethics charged with the responsibility of interpreting and implementing the Code. The nine members of the Board of Ethics were chosen from within the community, and generally were to serve three-year terms. (Three members were to be chosen from MARTA employees and the Board of Directors; three members were to be selected from bar associations in the metropolitan Atlanta area; two members were selected from the Atlanta and DeKalb chambers of commerce; and one member represented the Metropolitan Atlanta Rapid Transit Overview Committee.) Johnson contends that the Board of Ethics, in sharing its advisory opinions with the MARTA Board of Directors, tortiously interfered with his contract rights and made a wrongful public disclosure of private facts.

OCGA § 51-1-20 establishes immunity from civil liability for all persons serving "with or without compensation" on "any local governmental agency, board, authority, or entity . . . for any act or any omission to act arising out of such service if such person was acting in good faith within the scope of his or her official actions and duties and unless the damage or injury was caused by the willful or wanton misconduct of such person." The trial court found that the members of the MARTA Board of Ethics were entitled to the benefit of this statutory immunity, and we agree.

In this case, the Board of Ethics rendered its opinions concerning Johnson's conflict of interest arising from his wife's employment with a MARTA contractor, in response to Johnson's request for guidance regarding the matter. Following its initial adverse opinion, the Board of Ethics entertained Johnson's request for reconsideration and al-

lowed him to appear before the Board to present his case. The Board of Ethics met with him for several hours, during which time Johnson, according to his own deposition, presented all the information he had concerning the issue. The only member of the Board of Ethics personally familiar with Johnson was Morris Dillard, the deputy general manager of MARTA at the time. The Code of Ethics provided that one of the general duties of the Board of Ethics was "to render advisory opinions with respect to the interpretation and application of [the Code of Ethics] to all persons who seek advice as to whether a particular course of conduct would constitute a violation of the standards imposed herein," and the Board of Ethics customarily shared its opinions with MARTA management. There is no evidence whatsoever to refute the evidence of good faith and the absence of any wilful or wanton misconduct on the part of the Board of Ethics, and the trial court properly found the members of the Board of Ethics immune under OCGA § 51-1-20.

Johnson emphasizes that there was some evidence that the members of the Board of Ethics may not have been reappointed strictly according to the provisions for such contained in the Code of Ethics. Specifically, it appears that some members may have served beyond their designated terms of office without having been formally reappointed. It is undisputed, however, that the MARTA Board of Directors never chose to replace any such members. Contrary to Johnson's contention, the fact that the MARTA Board of Directors, which created the Board of Ethics, may not have strictly followed its guidelines for appointment of members of the Board of Ethics, does not render the acts of those members outside the scope of their official duties.

Further, the members of the Board of Ethics could not be liable for tortious interference with Johnson's contractual relations with MARTA, because liability for such arises "only when the interference is done by one who is a stranger to the contract." *Jet Air v. Nat. Union Fire Ins. Co.*, 189 Ga. App. 399, 403 (4) (375 SE2d 873) (1988). The Board of Ethics was charged with the duty of providing independent interpretation and implementation of the Code of Ethics, but the fact remains that it was established by the MARTA Board of Directors and in no way could be categorized as a "stranger" to MARTA and Johnson. Similarly, when the Board of Ethics shared with the Board of Directors its opinion regarding Johnson's potential conflict of interest, no public disclosure of private facts occurred. Communications between top officers within MARTA, pertaining to the operations of MARTA, do not constitute a public disclosure. See *Griggs v. K-Mart Corp.*, 175 Ga. App. 726 (334 SE2d 341) (1985).

3. Johnson contends that he was deprived of due process by the procedures employed by the Board of Ethics and the Board of Directors in concluding that his interest in his wife's employment created a

conflict of interest that required debarment of IBM. Specifically, he complains that he was never afforded notice and a hearing regarding his alleged violation of the Code of Ethics. However, because his employment was terminable at will, Johnson's property interest in his continued employment with MARTA was insufficient to invoke procedural due process protection. *Wofford v. Glynn Brunswick Mem. Hosp.*, 864 F2d 117 (11th Cir. 1989). His interest in his wife's employment with a MARTA contractor would be even less entitled to such protection.

Johnson also claimed that in applying the Code of Ethics to his case, MARTA had used a different standard than with other covered MARTA employees who had family members employed by MARTA contractors, in violation of his right to equal protection of the law. The only specific example he relied upon in support of this contention involved a situation in which the sister of a member of the Board of Directors was hired as a secretary by an architectural firm that had done business with MARTA. In that case, the Board of Ethics had not debarred the architectural firm, with the proviso that the Board member not participate in any other decisions relating to that architectural firm. That situation, however, differed greatly from Johnson's case, inasmuch as the Board member had no interest, direct or indirect, in the income his sister received from her employer. There is no constitutional requirement that " 'things which are different in fact or opinion . . . be treated in law as though they [are] the same.' " *Wallace v. State*, 224 Ga. 255, 257 (161 SE2d 288) (1968). Accordingly, the trial court properly granted summary judgment for the defendants on this claim as well.

To some extent, Johnson attempts to support his claim by emphasizing the difference between the ethical requirements imposed upon him by MARTA and those provided in OCGA § 45-10-22, applicable to state agencies and persons holding a state office. However, since MARTA is not a state agency and Johnson did not hold a state office, OCGA § 45-10-22 is inapplicable.

4. Following the trial on Johnson's claim for intentional infliction of emotional distress, the trial court gave comprehensive instructions to the jury without any objections by Johnson. During its deliberations, the jury posed several questions to the trial court, and in response to those questions, the court instructed the jury that the jurors must agree that MARTA's conduct was either "intentional or reckless," and that it was either "extreme and outrageous or so terrifying or so insulting as to naturally humiliate, embarrass or frighten the plaintiff." Johnson's contention that this instruction confused the jury regarding the alternative elements of the cause of action is without merit. The instruction constituted a correct statement of the law regarding intentional infliction of emotional distress, see *Bridges v.*

*Winn-Dixie Atlanta*, 176 Ga. App. 227 (335 SE2d 445) (1985), and we find nothing confusing about it.

5. In Case No. A92A2085, MARTA cross-appeals from the denial of its motion for summary judgment on the claim for intentional infliction of emotional distress. Our affirmance of the favorable verdict for MARTA on that claim in Division 4 above renders unnecessary any further consideration of MARTA's cross-appeal. Accordingly, the cross-appeal is dismissed.

*Judgment in Case No. A92A2084 affirmed; Case No. A92A2085 dismissed. McMurray, P. J., and Cooper, J., concur.*

DECIDED MARCH 3, 1993 —
RECONSIDERATION DENIED MARCH 17, 1993 — 

*Allan B. Johnson, Jr.*, pro se.
*Pursley, Howell, Lowery & Meeks, Paul A. Howell, Jr., Bryan A. Vroon*, for MARTA.