S97A0468. DEPARTMENT OF HUMAN RESOURCES v. PHILLIPS et al.
(486 SE2d 851)

SEARS, Justice.

In this appeal from a plaintiffs' verdict in a wrongful death action, we determine that the parties stipulated in the pretrial order that the Georgia Tort Claims Act's cap on damages recoverable against the State was applicable to their action, thereby limiting the damages that could be awarded to no more than $1 million per plaintiff. Thus, the trial court erred by entering judgment awarding the two plaintiffs in this case a total of $3.5 million. We also determine that the trial court's judgment does not include impermissible punitive damages, and that the trial court did not err in charging the jury, admitting certain evidence, or denying the State's directed verdict motion. Therefore, we reverse in part and affirm in part the judgment of the trial court.

When Lisa Phillips was nine months old, she suffered a severe case of colitis accompanied by a persistent high fever that resulted in organic brain damage, and left her severely mentally impaired. Her family cared for Lisa until she was ten years old, when she was institutionalized at Central State Hospital ("the Hospital"). Lisa lived at the Hospital for more than 20 years. In 1992, she was discovered lying on a bathroom floor at the Hospital, in a state of cardiopulmonary arrest. She later was pronounced dead. A subsequent autopsy revealed that she had died of acute aspiration and subsequent car-

diac arrest caused by a lethal combination of two anti-psychotic drugs, Serentil and Mellaril. According to the toxicologist who analyzed blood samples taken from Lisa, those two drugs cannot safely be administered together at the dosage levels found in Lisa's body. The evidence at trial showed that, at the time of Lisa's death, Mellaril was not prescribed for her by her physicians, and had not been for at least three years.

Appellee Virginia Phillips, acting both as Lisa's personal representative and as administratrix of Lisa's estate, filed suit against the Georgia Department of Human Resources ("DHR"), claiming that the Hospital's employees' negligence in caring for Lisa proximately caused her death. Following a ten-day trial, the jury returned a plaintiff's verdict, and awarded $2 million for the full value of Lisa's life, and $1.5 million for her pain and suffering. Relying upon the damages cap set forth in the Georgia Tort Claims Act ("the Act"),[1] DHR moved to combine and reduce the awards to a total of $1 million. Letter briefs were submitted to the trial court, and a hearing was held, on the applicability of the Act's damages cap. Thereafter, the trial court entered judgment awarding $1.5 million to the estate, and $2 million to Phillips in her representative capacity.

DHR appealed to the Court of Appeals, which certified to this Court the question raised by Phillips of whether application of the Act's cap on damages to this case would abridge the constitutional prohibition against the retroactive application of laws to the detriment of any vested right.[2] Subsequently, this Court ordered that the entire appeal be transferred to this Court. For the reasons explained below, we now reverse in part and affirm in part.

1. DHR contends that the trial court erred by entering judgment in the amount of $3.5 million because the pretrial order, agreed upon by the parties and executed by the trial court, stated that "[u]nder the State Tort Claims Act, OCGA § 50-21-29, the maximum amount of damages is $1,000,000.00, and if the jury awards an amount in excess of $1,000,000.00, said amount shall be written down by the Court."[3] Following the jury's verdict, DHR requested the trial court to reduce the entire award to $1 million, pursuant to the pretrial order.

---

[1] OCGA § 50-21-20 et seq. (1994).

[2] *Dept. of Human Resources v. Phillips,* 223 Ga. App. 520 (478 SE2d 598) (1996).

[3] We note that, consistent with the statement in the pretrial order that the Act's damages cap applies to Phillips' claim, Phillips' trial memorandum, filed the same day as the pretrial order, states:

This case is brought under the provisions of OCGA § 50-21-20, et seq., "The Georgia Tort Claims Act." Pursuant to applicable provisions of the State Tort Claims Act, the State has waived sovereign immunity for the torts of State officers and employees while acting in the scope of their official duties or employment.

The original complaint also makes reference to the Act, and asserts, among other things, that service was effected thereunder.

After hearing arguments and accepting briefs on the issue, the trial court entered judgment in the full amount of the jury's award. DHR claims that the trial court erred when it did not conform its judgment to the pretrial order's stipulation regarding damages.

The Civil Practice Act provides that once entered, the pretrial order "controls the subsequent course of the action unless modified at the trial to prevent manifest injustice."[4] The pretrial order has been likened to "a rudder to the ship of litigation,"[5] and is intended to limit the claims, contentions, defenses, and evidence that will be submitted to the jury, thereby narrowing the course of the action, and expediting its resolution.[6] As such, it is an indispensable tool for the efficient disposition of civil litigation matters.

The Code imposes a duty on each party to assist the trial court in formulating the pretrial order by defining the issues for trial, and deciding "such other matters as may aid in the disposition of the action."[7] This process is prescribed "in the hope of promoting efficiency and conserving judicial resources by identifying the real issues prior to trial, thereby saving time and expense for everyone."[8] For all of these reasons, it generally is recognized that, unless the pretrial order is modified at or before trial,[9] a party may not advance theories or offer evidence that violate the terms of the pretrial order.[10] As noted by one federal court, if pretrial orders are to continue to serve their laudable purposes, "courts and litigants must take them seriously. A final pretrial order should say what it means, and mean what it says."[11]

If a party desires modification of a pretrial order, application should be made to the trial judge either before or during the trial.[12] Our review of the record shows that Phillips first requested that the

---

[4] OCGA § 9-11-16 (b); see *Horne v. City of Cordele*, 254 Ga. 346, 347 (329 SE2d 134) (1985).

[5] Gregory, Georgia Civil Practice, p. 325, § 3-10 (1990); see *Berger v. Plantation Pipeline Co.*, 121 Ga. App. 362, 366 (173 SE2d 741) (1970).

[6] Gregory, supra at 326; Ruskell & McIntosh, Georgia Practice & Procedure, pp. 350-351, § 16-3 (1986).

[7] OCGA § 9-11-16 (a); see Uniform Superior Court Rules 7.1 and 7.2.

[8] *In re Control Data Corp. Sec. Litigation*, 933 F2d 616, 621 (8th Cir. 1991) (quoting Fed. R. Civ. Pro. 16 advisory committee notes, sub. c (1983)). See *Bicknell v. CBT Factors Corp.*, 171 Ga. App. 897, 898-899 (321 SE2d 383) (1984) (in construing Civil Practice Act, great consideration and weight is given to the federal courts' construction of the corresponding Federal Rules of Civil Procedure).

[9] See OCGA § 9-11-16 (b).

[10] See *Gaul v. Kennedy*, 246 Ga. 290, 291 (271 SE2d 196) (1980); *Control Data*, 933 F2d at 621; *Roland M. v. Concord School Comm.*, 910 F2d 983, 999 (1st Cir. 1990).

[11] *Roland M.*, supra.

[12] Gregory, supra at p. 327; *Echols v. Bridges*, 239 Ga. 25, 27 (235 SE2d 535) (1977) (if a litigant desires modification of a pretrial order, application should be made to the trial judge either before or during the trial for such modification).

trial court modify the pretrial order to permit damages in excess of $1 million per plaintiff nine days after the conclusion of the trial, in a letter brief to the court dated October 30, 1995. Because this request was made well after the trial's conclusion, the principles discussed above indicate that it was untimely.

As noted by Phillips, there may be situations in which a trial judge is authorized to modify a pretrial order acting sua sponte in order to "prevent manifest injustice."[13] However, that principle does not encompass an exception to the general rule that modification must be made before or during trial. In any event, we do not believe that a manifest injustice will result in this case if the pretrial order is not modified, as the modification urged by Phillips would tend to work an injustice against DHR. Before trial began, Phillips opted for a strategy that limited recovery to $1 million per plaintiff, and that strategy was memorialized in the pretrial order. To permit Phillips to change that tactic after the jury awarded her $1.5 million more than the pretrial order allowed, when DHR could not have anticipated that such an amount would be recoverable, would unfairly burden DHR's ability at trial to limit its damages.[14]

Relying on the principle that a pretrial order shall be deemed modified to conform to evidence that is admitted at trial without objection,[15] Phillips claims that because several times during the trial her counsel argued to the jury that damages in excess of $1 million should be awarded, the pretrial order in this case should be deemed automatically modified to support the $3.5 million judgment. We disagree. In support of this argument, Phillips relies upon comments made during voir dire, opening statements, and closing arguments to the jury advocating damages in excess of $1 million per plaintiff. Of course, it is axiomatic that such attorney arguments are not considered to be evidence, and the trial court in this case correctly charged the jury on that point of law.[16] Therefore, such arguments, standing alone and unobjected to, cannot render a pretrial order automatically modified.

In conclusion, because the pretrial order stated that the damages cap in the State Tort Claims Act applied to this case, the trial

---

[13] See *Dumas v. Beasley*, 218 Ga. 349, 352 (128 SE2d 59) (1962).

[14] See generally 3 Moore's Federal Practice, § 16.78 [4][b] (1997) (among the factors to be considered in determining whether "manifest injustice" warrants the modification of a pretrial order is whether granting the motion will unfairly impair the opposing party's ability to litigate the merits of the matter). See also *Walker v. Anderson Elec. Connectors*, 944 F2d 841, 844 (11th Cir. 1991) (legal relief theory not stated in the final pretrial order cannot support an award).

[15] See *Cooper v. Rosser*, 232 Ga. 597, 599 (207 SE2d 513) (1974).

[16] See *Richardson v. State*, 155 Ga. App. 664, 665 (272 SE2d 529) (1980); Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. I at 2 (1991).

court abused its discretion by implicitly modifying the pretrial order to support the $3.5 million judgment. The Act permits damages of no more than $1 million per person for a loss arising from a single occurrence, and the State's aggregate liability for a single occurrence cannot exceed $3 million.[17] In this case, suit was brought by one individual acting both as a personal representative and administratrix — two distinct legal "persons"[18] — and the jury awarded damages to both such legal persons. Therefore, under the pretrial order, the total maximum amount of damages that can be assessed against DHR is $2 million, and the portion of the judgment awarding damages in excess of that amount is reversed.

2. Phillips contends that her claims against DHR accrued before the Act's effective date, and that application of the Act's damages cap to the judgment in this case will violate the constitutional prohibition against applying laws retroactively in derogation of a vested substantive right.[19] Our ruling in Division 1 disposes of the need to address this enumeration. Pretermitting whether, absent the pretrial order's stipulation regarding damages, application of the Act's damages cap to Phillips' claim would violate the constitutional prohibition against retroactivity, it is clear that for purposes of this litigation, the parties agreed that the damages cap would apply. Contrary to the dissent's assertion, the trial court's failure to enforce the terms of the pretrial order regarding damages did not necessarily "implicitly decide" any constitutional issue, and (as ruled in Division 1) by enforcing the damages cap in the pretrial order, this Court need not, and does not, decide such constitutional questions, either.

Moreover, we note that Phillips actively participated in preparation of the pretrial order, and consented to its entry. It is well established that one cannot complain of a judgment, order, or ruling that her own procedure or conduct procured or aided in causing, nor can she be heard to complain of or question on appeal a judgment which she invokes.[20] Thus, even if this claim was not disposed of by our ruling in Division 1, it is waived for purposes of this appeal.

3. DHR complains that the trial court erred by permitting Phillips' counsel to argue to the jury that punitive damages should be

---

[17] OCGA § 50-21-29 (b).

[18] See *Stenger v. Grimes*, 260 Ga. 838 (400 SE2d 318) (1991); *Complete Auto Transit v. Floyd*, 214 Ga. 232, 235 (104 SE2d 208) (1958). Notably, two separate notices of claim were filed in this case, each asking for damages in the amount of $1 million. Because suit in this case was filed on behalf of two distinct legal persons, the pretrial order supports a damages award of $2 million, and thus the purported inconsistency discussed in footnote one of the dissent simply does not exist.

[19] See Ga. Const. 1983, Art. I, Sec. I, Par. V.

[20] *Brown v. Cronic*, 266 Ga. 779, 782 (470 SE2d 682) (1996). Similarly, our ruling in Division 1 disposes of the need to address DHR's separate enumeration that the trial court violated the Act by awarding damages in excess of what the Act permits.

awarded, and by entering judgment awarding punitive damages, because the pretrial order states that such damages are not recoverable. In support of this argument, DHR points to instances where, during closing argument, Phillips' counsel urged the jury to (1) reject DHR's attempt to "prevent justice" from prevailing; and (2) reject the theory that, because Lisa's severe mental impairment adversely affected her behavior, the value of her life should be discounted.

Contrary to DHR's argument, we find that Phillips' statements to the jury were highly relevant to the issues before the jury, and did not advocate the imposition of punitive damages. Phillips' statements directly refuted closing arguments made by DHR that detailed difficult aspects of Lisa's behavior, and some of the more extreme methods used to restrain such behavior. In her closing argument, Phillips directly referred to DHR's statements as an attempt to discount the value of Lisa's life, and sought to rebut that attempt with the statements complained of here. Furthermore, in her closing argument, Phillips did not encourage the jury to award damages to punish DHR or to deter DHR's future conduct. As such, Phillips' arguments did not "amount to a plea for punitive damages,"[21] that might warrant reversal. Therefore, we reject DHR's assertion that the damages awarded were punitive in part, and thus impermissible under the pretrial order.

4. DHR contends that the trial court erred by refusing to give its requested jury charge that, under the terms of the pretrial order and the Act, punitive damages were unavailable. The record shows that DHR requested such a charge, and that the trial court declined to give it because no punitive damages had been asked for by Phillips, and thus the charge was not adjusted to this case.

Our review of the record shows that early in its charge, the trial court properly instructed the jury that Phillips was seeking compensatory damages. Later in its charge, the court explained that damages were available as compensation for any injuries that the jury determined had been inflicted, and that in awarding such damages, the jury should consider the full value of Lisa's life as a gauge. The trial court also charged the jury that it could award damages for any pain and suffering that it found Lisa had experienced. Nowhere in its charge did the trial court intimate that punitive damages were available.

Because the charge, when read as a whole, was a correct statement of the law, we reject DHR's claim that the trial court erred by not issuing an instruction negating the possibility of punitive dam-

---

[21] *Myrick v. Stephanos*, 220 Ga. App. 520 (472 SE2d 431) (1996).

ages.[22] A correct charge will not be deemed erroneous simply because, in giving it, the trial court did not also charge the jury on some other correct, although inapplicable, principle of law.[23] Moreover, DHR's argument fails due to its overbreadth. Under DHR's theory, the trial court's charge would be erroneous because it also failed to state that treble and special damages were not available. We do not believe that trial courts should be required, when charging juries, to negate any and all possible theories of recovery that, regardless of their availability, are not asserted by either party during trial. To rule otherwise would not only be illogical, it also would impose an excessive burden on the trial courts.

5. DHR complains that the trial court incorrectly denied its directed verdict motion as to the issue of a treating physician's negligence. Lisa's treating physician, Dr. Grant, had prescribed for her a very high dosage of Serentil, one of the two drugs that, in combination, proximately caused Lisa's death. As stated above, the other drug that caused Lisa's death, Mellaril, was not prescribed for her. DHR contends that because Phillips introduced no expert testimony to show that the prescribing of an unusually high dosage of Serentil for Lisa constituted malpractice, the trial court erred in not granting a directed verdict motion as to the issue of Dr. Grant's professional negligence.

In determining whether the evidence warrants denial of a directed verdict motion, the evidence must be construed most favorably to the party opposing the motion, and the standard used to review the grant or denial of a directed verdict is the " 'any evidence' test."[24] Our review of the record in this case shows that there was ample evidence to support the trial court's denial of DHR's directed verdict motion. Dr. Grant's own testimony was that he initially prescribed Serentil for Lisa at a dosage five times higher than that recommended by the manufacturer, and left to the attending nurses' discretion whether to administer a dosage that was ten times higher than that recommended by the manufacturer. Dr. Grant also admitted that he instituted no monitoring procedures for Lisa, despite the testimony of Phillips' expert witness that special monitoring for adverse effects is required for a patient receiving such a high dosage of Serentil.[25] Finally, Dr. Grant testified that he was the physician responsible for prescribing and monitoring the medications adminis-

---

[22] *Green v. Gaydon*, 174 Ga. App. 796 (331 SE2d 106) (1985).

[23] See *Sheppard v. Broome*, 214 Ga. 659, 660 (107 SE2d 219) (1959); *Pearson v. George*, 209 Ga. 938, 942-943 (77 SE2d 1) (1953).

[24] See *Southern R. Co. v. Lawson*, 256 Ga. 798, 799-800 (353 SE2d 491) (1987).

[25] In this regard, we note that Phillips put forth expert testimony to establish a deviation from the requisite standard of care. See *Wagner v. Timms*, 158 Ga. App. 538 (281 SE2d 295) (1981).

tered to Lisa, and that Mellaril and Serentil should not have been administered to her in conjunction with one another.[26] We believe that this testimony more than satisfies the " 'any evidence' " standard, and thus warranted denial of the State's directed verdict motion.

6. Similarly, DHR contends that the trial court erred in charging the jury on physician malpractice, because Phillips did not introduce the medical expert testimony required to make out such a claim. We disagree. As stated above, Phillips introduced expert testimony that special monitoring procedures should have been instituted when Lisa was prescribed the extremely high dosage of Serentil, and the evidence is undisputed that such monitoring was not put in place. Moreover, Dr. Grant's own testimony, discussed above, shows that he was the doctor responsible for overseeing the drugs that Lisa ingested, and that she should not have taken the unprescribed Mellaril together with the prescribed Serentil. Thus, there was sufficient evidence to warrant the charge.[27] Moreover, Dr. Grant's negligence was highly relevant to Phillips' theory of liability, and thus properly included in the jury charge, because he was an employee of the hospital, which is operated by the named defendant, DHR. In this regard, the trial court correctly charged that the hospital was liable for any tortious acts of its employees, including physicians and nurses.[28]

7. Finally, we reject DHR's contention that the trial court erred by admitting into evidence package inserts for the drugs Mellaril and Serentil, because they are written hearsay not falling within any of the recognized exceptions to rule against hearsay. The inserts were published to the jury without objection from DHR, and thus it has waived its objection to their introduction.[29] Moreover, the record shows that DHR itself referred to the inserts when questioning Dr. Grant, and asked him about their contents. Having done so, DHR may not complain of or question on appeal the inserts' admission into evidence.[30]

*Judgment affirmed in part and reversed in part. All the Justices concur, except Benham, C. J., and Thompson, J., who dissent.*

---

[26] See *Lawrence v. Gardner*, 154 Ga. App. 722 (270 SE2d 9) (1980) (neither summary judgment nor directed verdict are appropriate where defendant's own expert testimony may be construed by the jury to support the plaintiff's claim of professional negligence). See also *Moore v. Candler Gen. Hosp.*, 185 Ga. App. 280 (363 SE2d 793) (1987).

[27] See, e.g., *Wood v. Food Giant*, 183 Ga. App. 604 (359 SE2d 410) (1987).

[28] We also note that no objection was raised to the giving of this charge.

[29] See *Black v. Johnson*, 233 Ga. 533 (212 SE2d 368) (1975).

[30] *Porter Coatings v. Stein Steel &c. Co.*, 247 Ga. 631, 632 (278 SE2d 377) (1981); *Pressley v. Jennings*, 227 Ga. 366, 376 (180 SE2d 896) (1971).

BENHAM, Chief Justice, dissenting.

I respectfully disagree with the majority's conclusion, formulated in Divisions 1 and 2, that the trial court was without power or authority to amend the pretrial order and was required to enter a judgment which conformed to the unmodified pretrial order.[31] I part company with the majority because I believe that the trial court had the authority to exercise its sound discretion and amend the pretrial order sua sponte or in response to a motion, and that this Court should be hesitant to interfere with the result of the trial court's exercise of its discretion in that regard. *Gilbert v. Meason*, 145 Ga. App. 662 (1) (244 SE2d 601) (1978).[32]

Some additional facts, documented by the record and previously reported in the Court of Appeals' certification of the case to this Court (223 Ga. App. 520 (478 SE2d 598) (1996)) are important to resolution of this issue. The jury returned its $3.5 million verdict in favor of Mrs. Phillips, was polled, and was excused. The attorney for DHR immediately stated his belief that the pretrial order required that the jury's verdict be written down since it was in excess of $1 million, in response to which Mrs. Phillips' counsel stated the possibility of attacking the constitutionality of the statute which would require such a diminution of the verdict.[33] When the trial court mentioned that a motion to modify the pretrial order could be made "sometime during the trial," counsel for Mrs. Phillips requested that the right to request modification be preserved, as they wished to check into the issue of attacking the constitutionality of the application to this case of the Tort Claims Act's statutory cap on damages. The trial court suggested that Mrs. Phillips' counsel look into modification of the pretrial order, and stated that the trial court "may modify it in . . . the interest of justice." After receiving letter briefs on the

---

[31] The pretrial order stated:

Under the State Tort Claims Act OCGA § 50-12-29, the maximum amount of damages is $1,000,000.00, and if the jury awards an amount in excess of $1,000,000.00, said amount shall be written down by the Court. Plaintiff may not seek or recover punitive damages under the Act.

[32] The majority opinion is internally inconsistent: it holds that the trial court was without power to modify the pretrial order and that the parties were bound thereby, yet it then modifies the pretrial order by awarding Mrs. Phillips $2,000,000 instead of the $1,000,000 maximum amount of damages set forth in the pretrial order. I would suggest that if the pretrial order can be modified by the appellate court twenty-one months after the judgment was entered, surely the trial court had the power to modify the pretrial order nine days after the verdict and prior to entry of judgment.

[33] OCGA § 50-21-27 (a) provides that the Act, which became effective July 1, 1992, "shall operate retroactively so as to apply to tort claims or causes of action which accrued on or after January 1, 1991." This wrongful death action accrued on February 2, 1992, when Lisa Phillips died. *Clark v. Singer*, 250 Ga. 470, 471 (298 SE2d 484) (1983). ("A cause of action for wrongful death caused by another arises in the spouse and/or children or parents of the deceased upon the death of such deceased.")

issue and holding a telephonic conference with the attorneys, the trial court entered judgment for Mrs. Phillips in the amounts awarded by the jury. In so doing, the trial court implicitly modified the pretrial order to permit a constitutional attack upon the application of the statutory damages cap, and implicitly decided the constitutional issue in favor of Mrs. Phillips. The appellate record contains nothing from the trial court elucidating the rationale for the entry of judgment. However, in the brief filed by Mrs. Phillips in the trial court in support of her motion to supplement the record, as well as in the transcript of the hearing on the motion, Mrs. Phillips' counsel stated that the trial court had telephonically ruled that "it was persuaded by [Mrs. Phillips'] arguments and that the full judgment would therefore be entered." Neither DHR nor the trial court has even taken exception to either the oral or the written statement.

A trial court has inherent power to sua sponte modify a pretrial order to prevent manifest injustice. *Dumas v. Beasley*, 218 Ga. 349, 352 (128 SE2d 59) (1962). It is unquestioned that a trial court also has statutory power to modify the pretrial order at trial to prevent manifest injustice. OCGA § 9-11-16 (b). Without saying so expressly, the majority has stripped the trial court of its inherent power and hobbled its statutory authority by implicitly holding, without explanation or definition, that the pretrial order cannot be modified after the verdict has been returned but before the entry of judgment.[34] Where, as here, the issue of the constitutionality of a law arises as a result of the verdict returned by the factfinder and a party raises the constitutional issue at the earliest practicable moment,[35] the trial court must have the discretion to modify the pretrial order to permit the argument and resolution of the issue of law pertaining to the entry of judgment. It is implicit from the entry of judgment that the trial court exercised its discretion to do just that. Contrary to the majority's assertion, neither party's ability to litigate the merits of the issue is unfairly compromised when the issue is one of law —

---

[34] In *Echols v. Bridges*, 239 Ga. 25, 26 (235 SE2d 535) (1977), the court interpreted the statutory temporal limitation of "at trial" to include all aspects "through the completion of trial." I suggest that, when the issue sought to be added is one of law, a trial is not complete until judgment is entered.

[35] Had Mrs. Phillips' counsel suggested before the return of the verdict that application of the statute requiring that a verdict in excess of $1,000,000 be written down to $1,000,000 was unconstitutional, he would have been silenced with a ruling that his argument was premature since Mrs. Phillips was not hurt and her rights were not affected by the statute until a verdict in excess of $1,000,000 was returned. See *Bo Fancy Productions v. Rabun County Bd. of Commrs.*, 267 Ga. 341 (478 SE2d 373) (1996), where this Court stated that the only prerequisite to attacking the constitutionality of a statute " 'is a showing that it is hurtful to the attacker. [Cit.]' " See also *Keenan v. State*, 263 Ga. 569 (1) (436 SE2d 475) (1993), where this Court ruled that a party had no standing to challenge the constitutionality of a statute unless the party's rights were affected by it.

DHR's ability to argue the constitutionality of the statute was not unfairly impaired by permitting argument to be made. The only problem, as far as DHR is concerned, is that its arguments failed to persuade the trial court that the statute was constitutional.

I believe that the trial court did not abuse its discretion in determining that manifest injustice would result if the trial court failed to examine the constitutional issue before entering judgment. After all, the jury had concluded that DHR was responsible for Ms. Phillips' death, and that Ms. Phillips' estate and her mother had proven suffering and damage which justified compensation in the amount of $3.5 million. OCGA § 50-21-27 (a) barred entry of a judgment in the amount of the verdict, and it was the trial court's duty, when a party questioned the constitutionality of that statute, to exercise its inherent authority to modify the pretrial order to prevent manifest injustice by permitting a legal discussion of the issue. DHR's attorney cannot claim unfair surprise since he was aware from shortly after the return of the verdict that the statute's constitutionality was in question and that the trial court saw modification of the pretrial order as the means for getting the issue before the court, and he wrote letter briefs and argued telephonically in support of the statute. See *Echols v. Bridges*, 239 Ga. 25, 27 (235 SE2d 535) (1977), where the court determined that the trial court did not abuse its discretion when " 'there can be no viable claim of surprise or unfairness in the court's consideration of the issue involved in the ruling. . . .' " The result of the majority's resolution of the case at bar is a classic example of manifest injustice: a possibly unconstitutional judgment is ordered entered by the appellate court on the ground that the trial court had no discretion to permit the parties to argue an issue of law which became pertinent when the jury returned its verdict. This is not a liberal construction of the pretrial order which permits "the consideration of all questions fairly within the ambit of the contested issues" (*Echols v. Bridges*, supra, 239 Ga. at 27), and it is contrary to the spirit of the Civil Practice Act that cases be decided on their merits, thereby avoiding decisions based on other considerations. *Ambler v. Archer*, 230 Ga. 281, 286 (196 SE2d 858) (1973).

The appellate courts are unlikely to find an abuse of discretion where a trial court fails to modify a pretrial order without a motion. *Gilbert v. Meason*, supra, 145 Ga. App. 662 (1). I suggest that the appellate courts should be just as unwilling to find an abuse of discretion when the trial court does modify the pretrial order. Because the majority rules otherwise, I must respectfully dissent.

I am authorized to state Justice Thompson joins in this dissent.

DECIDED JULY 16, 1997 —
RECONSIDERATIONS DENIED JULY 30, 1997.

*Thurbert E. Baker, Attorney General, William C. Joy, Senior Assistant Attorney General, Kevin M. O'Connor, Assistant Attorney General, Sell & Melton, John A. Draughon,* for appellant.

*Walbert & Mathis, David F. Walbert, Charles A. Mathis, Jr., David A. Webster,* for appellees.