A99A0768. STOVER et al. v. CANDLE CORPORATION OF AMERICA.
(520 SE2d 7)

ANDREWS, Judge.

John and Carolyn Stover, individually and d/b/a Stover Sales Associates (Stover), appeal from the trial court's grant of Candle Corporation of America's (CCA's) motion for directed verdict. Finding no error, we affirm.

This case arose after Stover quit working as a sales representa-

tive for CCA. Stover claimed CCA did not pay him all the commissions due him within 30 days of the date of the termination of the employment agreement as required by OCGA § 10-1-702.

1. In Stover's first enumeration of error he argues the trial court erred in granting CCA's motion in limine to exclude a recorded telephone conversation between Stover and the Chief Financial Officer of CCA, Howard Rose. Stover argues that the tape of the conversation shows this was not an offer to settle a disputed amount, but rather, an independent admission of liability. We disagree.

OCGA § 24-3-37 provides that admissions or propositions made with a view to a compromise are not proper evidence. On the other hand, an unsolicited offer to settle for the full amount of the original claim is admissible. *Houston v. Kinder-Care Learning Centers*, 208 Ga. App. 235, 238 (430 SE2d 24) (1993).

Here, the transcript of the conversation shows that Rose called Stover and told him he was calling to discuss a settlement and asked Stover if he was "interested in having that discussion." Stover told him to go ahead and that he would listen. Rose then said he did not know where Stover had come up with the figure of $250,000 and offered a settlement in the $50,000 "range." Stover rejected the offer, saying they were "too far apart for that."

Therefore, it is clear from the record that the offer was an effort to compromise a claim which was still being disputed. *Computer Communications Specialists v. Hall*, 188 Ga. App. 545, 546 (373 SE2d 630) (1988). The trial court did not err in granting CCA's motion in limine to exclude this evidence.

2. The trial court correctly granted CCA's motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the "any evidence" test. *Dept. of Human Resources v. Phillips*, 268 Ga. 316 (486 SE2d 851) (1997). "A directed verdict is authorized only when there is no conflict in the evidence on any material issue and the evidence, with all reasonable deductions and construed in favor of the non-moving party, demands a certain verdict. OCGA § 9-11-50 (a)." *Moore v. American Suzuki Motor Corp.*, 203 Ga. App. 189 (416 SE2d 807) (1992).

Stover made several claims for amounts due, one of which concerned the reduction of his commission from five percent to two percent on his account with the Lowe's stores. Stover argued that CCA's proposal to retroactively reduce commission rates could not, without Stover's acceptance, create a new agreement under Georgia law. While this may be true, Stover admitted at trial that the reduction in commissions was not retroactive and did not begin until after Stover was notified of the change. The evidence at trial showed that CCA decided to terminate Stover's involvement with the Lowe's account and take it "in-house." Stover agreed that CCA had the right to take

the Lowe's account away from him and not pay him for it. But, he argues they did not have the right to reduce his commissions on the account without his consent.

CCA cites to numerous cases in which this Court has affirmed the right of an employer to vary the terms of an at-will employment because an at-will employment contract is unenforceable. See, e.g., *Johnson v. MARTA*, 207 Ga. App. 869, 870 (429 SE2d 285) (1993); *Taylor v. AMISUB, Inc.*, 186 Ga. App. 834, 836 (368 SE2d 791) (1988). Stover claims, however, that his independent contractor status precludes applying the at-will doctrine in this case. Stover cites to no authority for this proposition, and we find none. Moreover, Stover admitted at trial that his agreement with CCA was an oral contract which either party could terminate at any time, thus making it identical to an at-will employment situation. Therefore, we conclude that under the at-will employment doctrine, CCA could vary the terms of its agreement with Stover and thus could change the commission rate paid to Stover without Stover's consent.

Stover also claims CCA promised to reimburse the sales representatives a one percent commission if they exceeded their projected sales. Stover's testimony at trial was that if CCA had "increases in sales and profits, that one percent would be given back."

The trial court correctly granted a directed verdict on this claim. First, this claim fails because a promise to pay a bonus in the future is not enforceable under a terminable-at-will employment contract. *Taylor*, supra at 836; *E. D. Lacey Mills v. Keith*, 183 Ga. App. 357, 360 (359 SE2d 148) (1987). Moreover, because there is no evidence to show what the condition meant, the promise was too indefinite to be enforceable. *Transkey, Inc. v. Adkinson*, 225 Ga. App. 457, 460 (484 SE2d 30) (1997).

Stover also claimed there were amounts that were improperly "charged back" against his commissions. Stover testified that the way he determined that the charge back was improper was to go through the paperwork and, if there was no documentation accompanying the charge back, he "assumed" it was not proper. But, when questioned on cross-examination, Stover admitted that CCA rarely sent backup documentation for charge backs.

Additionally, Stover testified that CCA had not paid him all amounts owed because CCA had made numerous accounting errors in determining his commissions.

Finally, Stover testified that CCA owed him $256,000. But, he admitted that he did not have separate figures for all of his claims, only the lump sum amount. For instance, he said he did not have a figure for the amount for the commission reduction from two percent to five percent because "it would take a long time to add all these up. . . ."

He also admitted he did not make a separate calculation of the one percent in additional commissions he claims he was promised. Likewise, in determining his damages, he said he went through the spreadsheets and raised all of the two, three and four percent commissions to five percent. As previously stated, his method of determining whether the charge back against his commission was incorrect was to go through the paperwork and if there was no documentation, he "assumed" it was not a proper charge back.

We have already concluded that Stover was not entitled to damages on his claim that his commission was improperly reduced and on his claim that he did not receive the one percent additional commission promised. As the trial court correctly concluded, this made it impossible for the jury to determine what amount, if any, was properly owed to Stover. Stover himself admitted at trial that he did not determine specific amounts for each claim because it would have taken too long to add the figures up. He also admitted that if the jury found he was not entitled to part of the claim, it would have no way of knowing what portion of the total claim it should disallow.

Therefore, while some portion of the claimed sum may have been recoverable, that portion cannot be determined from the lump sum evidence presented. *Gen. Warranty Corp. &c. v. Cameron-Hogan, Inc.,* 182 Ga. App. 434, 437 (356 SE2d 83) (1987). "A jury must be able to calculate the amount of damages from the data furnished and it cannot be placed in a position where an allowance of loss is based on guesswork." Id. Here, the data furnished consisted of over 2,300 pages of company records. To expect the average juror to go through these records and try to determine what damages, if any, were due Stover, when Stover himself, being familiar with the records, said it would take too long to determine certain amounts, was not reasonable.

Moreover, while Stover was not required to prove his damages to the exact dollar, he was required to provide some rational basis for the computation. *Lawson v. B. P. Constr.,* 166 Ga. App. 754, 756 (305 SE2d 396) (1983). For example, to go through the paperwork and assume a commission was improperly charged back just because there was no documentation is too speculative to provide a basis for recovery. Id. Therefore, in light of this and for the reasons set out above, we conclude the trial court did not err in directing a verdict for CCA on Stover's claim for unpaid commissions.

3. Stover also claims that even if the trial court correctly granted a directed verdict on some issues, it was error to direct a verdict on all the issues because CCA violated OCGA § 10-1-702 of the Wholesale Distribution Act and is therefore liable for attorney fees and exemplary damages. This Code section provides that when a contract between a principal and a sales representative is terminated, the

principal shall pay all commissions due the representative within 30 days.

The evidence at trial was that Stover wrote CCA a letter on August 5, 1996, stating, "We are with this letter giving you a ninety day notice of this resignation." Therefore, the plain language of the letter shows that Stover's resignation became effective in early November and all commissions due were payable by sometime in early December.

Nevertheless, despite this clear testimony, Stover continues to argue on appeal that his resignation was effective on August 5 and checks paid in October, November and February were paid outside the 30 days allowed after termination. More importantly, however, Stover does not support this claim on appeal; instead, he makes conclusory statements such as: "Stover was not paid amounts owed within 30 days," and "almost $100,000 was belatedly paid to Stover long after the expiration of the 30 day time frame," and "[t]he undisputed evidence shows that CCA intentionally withheld commissions from Stover beyond the 30 day time limit. . . ."

A review of the record shows a $17,500 check paid to Stover by CCA in February, which appears to be the only one paid outside the statutory time frame. Stover admitted that the normal course of business between him and CCA was for CCA to pay him his commissions after shipment of the product. Stover also testified that the company continued to send him statements and checks for items shipped after he resigned as sales representative.

An appellant has the burden to show error affirmatively by the record, and this burden cannot be discharged by recitations of error in the brief. *Speir v. Krieger*, 235 Ga. App. 392, 394-395 (509 SE2d 684) (1998). Because Stover has not supported this claim with specific argument, citation to the record or to authority, we are unable to address it. Court of Appeals Rule 27. Therefore, for the reasons stated above, we conclude that the trial court correctly granted CCA's motion for directed verdict.

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED JUNE 2, 1999 —
RECONSIDERATION DENIED JUNE 24, 1999 — CERT. APPLIED FOR.

*Lawrence E. Newlin*, for appellants.
*Rogers & Hardin, Phillip S. McKinney, Rose D. Stewart*, for appellee.