NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: October 15, 2024

S24A0789. RBC GLOBAL ASSET MANAGEMENT (U.S.), INC. v. LATTIMORE.

ELLINGTON, Justice.

RBC Global Asset Management (U.S.), Inc., ("Global") appeals from the order of the State Court of Fulton County denying its motion to set aside the garnishment default judgment entered against it in favor of Markisha Lattimore. Global, a registered investment advisor, contends that the trial court erred in denying its motion to set aside the default judgment, arguing that Lattimore failed to obtain personal jurisdiction over Global when it initiated the garnishment action using a garnishment summons form that did not apply to Global. We agree with Global and reverse the order of the state court.

1. *Standard of Review and Pertinent Facts.* An appellate court

reviews an order resolving a motion to set aside a default judgment for an abuse of discretion. *Ameriprise Holdings, Inc. v. McCampbell*, 371 Ga. App. 323, 323 (899 SE2d 509) (2024). A trial court abuses its discretion when it commits "a significant legal error or a clear error as to a material factual finding." *Rockdale Hosp., LLC v. Evans,* 306 Ga. 847, 851 (834 SE2d 77) (2019).

The pertinent facts of this case are not in dispute. In September of 2022, Lattimore obtained a judgment exceeding $20 million against Kim Brothers Kickin' Kids, LLC ("Kickin' Kids"). There is no evidence in the record indicating that Lattimore engaged in post-judgment discovery or that she tried to collect the judgment directly from Kickin' Kids. Instead, on December 30, 2022, Lattimore initiated garnishment actions against twelve financial services companies, including Global. She did so by using the statutory form "Summons for Garnishment on a Financial Institution" found in OCGA § 18-4-76. There is no evidence in the record that any of the garnishees actually held any of Kickin' Kids' assets.  Upon receiving the summons, Global determined that it held no money or property

for Kickin' Kids; however, it failed to respond to the summons or otherwise notify Lattimore of that fact. When Global failed to answer the summons within 15 days, Lattimore moved for a garnishment default judgment of $20,325,479.45 – the full amount of the underlying tort judgment against Kickin' Kids plus post-judgment interest.[1]  Lattimore purportedly mailed the motion and exhibits to Global's registered agent, but Global's agent stated in an affidavit that she did not receive the motion and, consequently, did not respond to it.  On May 17, 2023, the state court entered a default judgment against Global for the full amount of the underlying judgment and, thereafter, Lattimore served the default judgment on Global. Global did not move to reduce the default judgment within

---

[1] OCGA § 18-4-22 provides:
When a garnishee is a financial institution and fails or refuses to file a garnishee answer by the fifteenth day after the date of service of the summons of garnishment, such garnishee shall automatically be in default. The default may be opened as a matter of right by the filing of a garnishee answer within 15 days of the day of default and payment of costs. If the case is still in default after the expiration of the period of 15 days, judgment by default may be entered at any time thereafter against such garnishee for the amount remaining due on the judgment obtained against the defendant as shown in the plaintiff's affidavit of garnishment.

3

the next 90 days as provided in OCGA § 18-4-24 (a).

On October 23, 2023, Global moved to set aside the default judgment pursuant to OCGA § 9-11-60 (d) and the state court's inherent authority. Global argued that, because it is a registered investment adviser and not a bank or other repository of client funds falling within the definition of "financial institution" in OCGA § 18-4-1 (4), Lattimore improperly served it using the summons form for a financial institution. Because Lattimore used the wrong garnishment summons form, Global contended that Lattimore failed to obtain personal jurisdiction over it and the garnishment action and resulting default judgment are invalid under OCGA § 18-4-7 (d). Global also argued that, if the $20 million default judgment against it were allowed to stand, the application of the garnishment statutes under the facts of this case would impose a penalty that violates the due process, equal protection, and excessive fines provisions of the United States and Georgia Constitutions. Global also attached to its motion a form garnishee answer stating that it held no property, money, or accounts of the tortfeasor defendant, Kickin' Kids.

4

The state court denied Global's motion, ruling, in pertinent part, that Global is a financial institution, that Lattimore used the correct summons form and process to obtain its default judgment, and that Global waived any defect in the form used to initiate the garnishment action.[2] Global timely filed with this Court an application for discretionary appeal from the state court's order. We granted the application and asked the parties to consider whether the state court erred when it ruled: Global is a "financial institution" as defined in OCGA § 18-4-1 (4), Lattimore used the correct garnishment summons form to initiate the garnishment action

---

[2] The court also ruled that the garnishment summons notified Global of the consequences of its failure to timely respond. Global had 90 days to reduce its liability to $50 after receiving the judgment, but it failed to take advantage of that opportunity. See OCGA § 18-4-24 (a). The court also ruled that nothing in OCGA § 9-11-60 (d) allows parties to challenge the constitutionality of a default judgment. Yet, notwithstanding its position that it lacked jurisdiction to set aside the default judgment on such grounds, the court held that, in these circumstances, no due-process violation occurred because the garnishee had actual notice of the consequences of engaging in the specified wrongful conduct. The court did not address Lattimore's equal protection argument. The court also ruled that no excessive fine exists here because OCGA § 18-4-22 sets the amount of default judgments and garnishment courts lack authority to reduce that amount. Finally, the court ruled that the amount of the garnishment judgment was not excessive because the appellate courts have "affirmed dozens of default judgments of $1 million or more."

against Global, and Global could not challenge in its motion to set aside whether Lattimore had obtained personal jurisdiction over it because she had used the incorrect garnishment summons form.[3] As explained more fully below, Lattimore initiated the garnishment action using the wrong summons form; therefore, she failed to obtain personal jurisdiction over Global. Because the state court abused its discretion in denying Global's motion to set aside the garnishment default judgment on this ground, we reverse the order appealed.

2. The state court erroneously concluded that Global is a "financial institution" as defined in OCGA § 18-4-1 (4), and that Lattimore therefore used the correct form of garnishment summons when initiating this garnishment action. The parties do not dispute that Global is a "registered investment adviser," as that term is

---

[3] We also asked the parties to consider whether the state court erred by ruling that Georgia's garnishment statutes are constitutional as applied in this case and whether the state court erred by ruling that Global could not raise a constitutional challenge in its motion to set aside the garnishment default judgment. We do not reach these questions because we are able to resolve the merits of this appeal on the statutory arguments presented in support of Global's claims of error. *State v. Randall*, 318 Ga. 79, 81 (2) (897 SE2d 444) (2024) ("Generally speaking, this Court will not reach novel constitutional questions when a case can be resolved without passing on such issues.").

defined under state law and federal regulations.[4] Global advises institutions on investment strategies and offers management services for institutional clients and large investment portfolios. A Global corporate representative stated in an affidavit that Global does not "market its advisory services to retail clients" and does not have retail locations "open to the general public." Global is "not a federal or state chartered commercial or savings bank," nor is it a "savings and loan association," "credit union," "insurance company," "benefits association," "safe-deposit company," "trust company" or "money market mutual fund."

The garnishment chapter defines "financial institution" to mean:

> every federal or state chartered commercial or savings

---

[4] In a sworn affidavit, a Global executive stated that Global "is a registered investment adviser . . . as defined in 15 U.S.C. § 80b-2 (a) (11); its Central Registration Depository No. is 107173, and its Securities and Exchange Commission No. is 801-20303." An investment advisor "registered under the Investment Advisers Act of 1940, 15 U.S.C. Section 80b-1, et seq." is defined as a "Federal covered investment adviser" under the Georgia Uniform Securities Act of 2008. OCGA § 10-5-2 (8). Federal covered investment advisers are required "to file a notice, a consent to service of process," and to pay certain fees in order to transact business lawfully in Georgia. OCGA § 10-5-34 (c). Global filed an exhibit showing that it "became notice filed or registered" in Georgia on March 3, 1997.

bank, including savings and loan associations and cooperative banks, federal or state chartered credit unions, benefit associations, insurance companies, safe-deposit companies, trust companies, any money market mutual fund, or other organization held out to the public as a place of deposit of funds or medium of savings or collective investment.

OCGA § 18-4-1 (4). The definition of "financial institution" does not include "registered investment advisors." In fact, the Georgia Uniform Securities Act of 2008 defines "investment adviser" to specifically exclude a "bank or savings institution" as well as a "credit union" – those two institutions that are first on the list in OCGA § 18-1-4 (4). See OCGA § 10-5-2 (17) (E, F). Registered investment advisors do not accept or hold bank deposits or savings accounts; in fact, they are statutorily forbidden from doing so. See OCGA § 7-1-241 (a) ("No person or corporation may engage . . . in the business of banking or receiving money for deposit or transmission" except "a bank, a national bank, a credit union," among other banking entities). The same is true at the federal level.[5]

---

[5] Global, as a registered "investment adviser," may not function as a "bank or any bank holding company[,]" except under circumstances not

8

Global's corporate representative confirmed that Global does not hold bank deposits or savings accounts and that it does not have actual custody of client funds.[6]

Additionally, as a registered investment advisor, Global does not hold itself "out to the public as a place of deposit of funds or medium of savings or collective investment" as required by the garnishment chapter. OCGA § 18-4-1 (4).[7] This final clause of the statutory definition of "financial institution" is not read broadly as a catch-all for any type of financial entity; rather, as this Court has held, it is merely reiterative of the type of organizations specifically

---

pertinent here. See 15 USC § 80b-2(a)(11). Unless registered investment advisers are also "qualified custodians" – which Global is not – they are forbidden from "hav[ing] custody of client funds or securities."  17 CFR § 275.206(4)-2(a).

[6] Pursuant to Securities and Exchange Commission regulations (Rules and Regulations, Investment Advisers Act of 1940), Global may have "deemed custody" of portfolios or funds that it manages, even though those funds are held by others. "Deemed custody" is a term of art used to indicate managerial control of the funds for investment purposes, not *actual* possession or custody. See 17 C.F.R. § 275.206(4)-2 (custody of funds or securities of clients by investment advisers). Global's SEC filings list the companies that actually hold its clients' funds.

[7] We note that, in the banking industry, a "medium of collective investment" is simply a trust account where depositor funds are held collectively and permitted to be commingled. See 12 CFR § 9.18; see also OCGA § 7-1-313 (authorizing trust companies to establish and maintain "collective investment funds").

9

listed in the statute. See *Blach v. Diaz-Verson*, 303 Ga. 63, 64-66 (810 SE2d 129) (2018) ("Or" is used as a reiterative term, and "in the context of the chapter as a whole, the natural and reasonable use of this phrase at the end of subsection (4) of OCGA § 18-4-1 is to describe generally all the entities listed earlier in the subsection. That is, that a 'financial institution,' for purposes of a garnishment on a financial institution pursuant to OCGA § 18-4-4 (c) (2), is an entity that is a place of deposit for a defendant's funds or medium for a defendant's savings or investments, for example, those listed in the subsection." (citations omitted.)). See also *Bissonnette v. LePage Bakeries Park St.,* 601 U.S. 245 (144 SCt. 905, 218 LE2d 2024) (2024) (in the phrase "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," the residual clause is "controlled and defined by reference to the specific categories . . . that precede it" (quotation omitted)). Thus, the clause "or other organization held out to the public as a place of deposit of funds or medium of savings or collective investment" is most naturally read as drawing meaning from, as well as providing

10

meaning to, the first clause rather than expanding the definition to include other kinds of financial entities. See *Blach*, 303 Ga. at 66. In short, the defining characteristic of a "financial institution" as used in this statute is "an entity that holds an account where a defendant's funds are deposited, saved, or invested." Id. Global does not meet that definition because it does not hold such client accounts.

Given that Global does not meet the definition of a financial institution under the statute, Lattimore used the wrong summons form to initiate her garnishment action against Global. The garnishment code provides one summons form for a general garnishment and a different form for garnishments on a "financial institution." See OCGA §§ 18-4-74, 18-4-76, 18-4-78, and 18-4-80. It also provides: "When a plaintiff uses the incorrect form for a summons of garnishment of any type, *the garnishment shall not be valid* and *the garnishee shall be relieved of all liability*." (OCGA § 18-4-7 (d) (emphasis added)). In this case, Lattimore used the garnishment summons form for a financial institution, a form that

11

did not apply to Global; therefore, the garnishment was invalid. Consequently, Lattimore failed to obtain personal jurisdiction over Global. See *Jahanbin v. Rafieishad*, 292 Ga. 806, 807 (741 SE2d 648) (2013) ("Without proper service, the trial court did not obtain jurisdiction over [the defendant] and thus erred in denying [his] motion to set aside the final judgment."); *Lewis v. Capital Bank*, 311 Ga. App. 795, 797 (717 SE2d 481) (2011) ("A court obtains jurisdiction of the person of the garnishee . . . only after he has been served with proper process or waives service of process by appearing voluntarily or some other affirmative act.").

3. The state court abused its discretion by ruling that Global could not raise the personal-jurisdiction defect resulting from Lattimore's use of the incorrect summons form in its motion to set aside the garnishment default judgment on the theory that Global had waived its challenge to the form of the garnishment summons by not raising that challenge in an answer or motion to dismiss. See OCGA § 9-11-12 (h) (1) (B). The waiver provision of § 9-11-12 (h) (1) (B) does not apply to a party who moves to set aside a default

12

judgment on the ground of lack of personal jurisdiction premised on insufficient service of process. See *DeJarnette Supply Co. v. F.P. Plaza, Inc.*, 229 Ga. 625, 626 (193 SE2d 852) (1972). As we explained, "[w]here there has been no legal service on the defendant and no waiver of service, the court has no jurisdiction to enter any judgment in the case unless it be one dismissing the case for lack of jurisdiction." Id. at 625. Thus, if the process defense is meritorious, as it is here, the default judgment must be set aside. Id. at 626.

Moreover, the garnishment code expressly provides that using the incorrect form for a summons of garnishment renders the garnishment invalid and relieves the garnishee of all liability. See OCGA § 18-4-7 (d). Plainly, it imposes no requirement that the garnishee raise the incorrect-summons issue in an answer or motion to dismiss, and it provides no exception for liability resulting from a default judgment. Because the garnishment action was initiated by the wrong summons form, the defect was not waived under the circumstances of this case. See *Ameriprise Holdings*, 371 Ga. App. 323, 328 n.23 (899 SE2d 509) (2024) ("[I]n light of the clear directive

13

contained in OCGA § 18-4-7 (d) . . . [,] we decline to hold that the failure to raise this [incorrect-summons-form] defense prior to the motion [to set aside] is subject to waiver under OCGA § 9-11-12 (h)."). Further, the argument Lattimore made below that Global waived its insufficient-process defense because it had actual notice of Lattimore's garnishment action has been rejected by the Court of Appeals, and we likewise reject it. See, e.g., *Lewis*, 311 Ga. App. at 799 (That "the garnishee may have received actual notice does not obviate the need for proper service of process" or prevent a court from setting aside a default judgment for insufficient service of process. (citation and punctuation omitted)). And finally, Lattimore's argument that Global waived its insufficient-process and lack-of-personal-jurisdiction defenses in this case because it answered a financial-institution summons in a different case involving a different plaintiff is untenable. See *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991) ("A party's consent to jurisdiction in one case . . . extends to that case alone. It in no way opens that party up to other lawsuits in the same jurisdiction in

14

which consent was given, where the party does not consent and no other jurisdictional basis is available."); see also *Quire v. Clayton Cnty. Dep't of Fam. & Child. Servs.*, 242 Ga. 85, 87 (249 SE2d 538) (1978) (explaining that, even for the non-jurisdictional defense of lack of venue, a party's "appearance in [one] suit cannot have the effect of waiving their right to object to improper venue in a separate . . . suit"). Because Lattimore failed to obtain personal jurisdiction over Global when it used the incorrect garnishment summons form, the state court abused its discretion in denying Global's motion to set aside the garnishment default judgment. See OCGA § 9-11-60 (d) (1) ("A motion to set aside may be brought to set aside a judgment based upon . . . [l]ack of jurisdiction over the person[.]").

*Judgment reversed. All the Justices concur, except Boggs, C.J., not participating, and Pinson, J., disqualified.*