**FOURTH DIVISION**
**MCFADDEN, P. J.,**
**WATKINS and PADGETT, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**May 20, 2026**

# In the Court of Appeals of Georgia

A26A0099. JOHNSON v. EVERETT et al.

MCFADDEN, Presiding Judge.

John Johnson brought this medical malpractice action against University Surgical Associates of Athens, PC, and one of its doctors, Christopher B. Everett. After a jury trial, the trial court entered judgment on the verdict in favor of the defendants and denied Johnson's motion for new trial. On appeal, Johnson argues that he should be given a new trial because the trial court improperly allowed the jury to consider the issue of gross negligence under the emergency medical care statute, OCGA § 51-1-29.5, although the parties had not listed that issue in their joint pretrial order. The record shows that the trial court believed he was required to allow the jury to consider the issue, when in fact the trial court had the discretion to disallow it, so

we vacate the ruling denying the motion for new trial and remand for the trial court to exercise his discretion in the first instance.

Johnson also challenges the trial court's decisions to allow opinion testimony from the defendants' expert witness and to admit into evidence a complaint filed in a different case. We address these claims because they are likely to recur after remand, but we find no ground for reversal.[1]

1. *Background*

We begin by noting that Johnson did not ask for the entire record to be sent to us on appeal. As a result, the appellate record does not include most of testimony and evidence presented to the jury.

For this reason, we cannot articulate the underlying facts of this case in the normal way. Instead we will use the allegations of Johnson's complaint to provide a context for understanding the issues on appeal, recognizing that those alleged facts may or may not have been supported by evidence at trial.

---

[1] Oral argument was held in this case on December 16, 2025, and is archived on the court's website. See Court of Appeals of Georgia, Oral Argument, Case No. A26A0099 (Dec. 16, 2025), available at https://vimeo.com/1148064901?fl=tl&fe=ec.

Johnson brought this action for medical malpractice against Everett and the medical practice that employed him. Johnson alleged that Everett, a vascular surgeon, was on call on Friday, January 27, 2017, when Johnson went to the emergency room at St. Mary's Hospital with symptoms associated with arterial blockage in his left leg. Everett recommended that Johnson return home and follow up with another doctor in the University Surgical Associates practice the following Monday.

Johnson alleged that his symptoms worsened and he returned to the St. Mary's emergency room the next day, Saturday, January 28, 2017. Everett, who was still on call with St. Mary's, was at a different hospital at the time. He recommended that Johnson either be transferred to that other hospital, Athens Regional Medical Center, or wait for his Monday appointment. Johnson chose to be transferred.

Johnson alleged that he underwent testing at Athens Regional, and the next day Everett performed surgery on his leg. Johnson alleged that he now suffers from numbness in his left leg and foot and a permanent left foot drop, which he attributes to Everett's purported negligence in failing to timely evaluate and treat his symptoms when he went to the hospital on Friday, January 27.

2. *Consideration of an issue omitted from the pretrial order*

Johnson argues that the trial court erred by permitting the jury to consider an issue omitted from the pretrial order, the applicability of OCGA § 51-1-29.5. That statute, in certain situations, imposes a gross negligence standard in actions "involving a health care liability claim arising out of the provision of emergency medical care[,]" OCGA § 51-1-29.5(c). The statute defines "[e]mergency medical care" as

> bona fide emergency services provided after the onset of a medical or traumatic condition manifesting itself by acute symptoms of sufficient severity, including severe pain, such that the absence of immediate medical attention could reasonably be expected to result in placing the patient's health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part.

OCGA § 51-1-29.5(a)(5). This definition encompasses "physicians who provide care from a location other than the emergency room[,]" such as via telemedicine. *Wilson v. Inthachak*, 372 Ga. App. 341, 348(1)(a) (904 SE2d 414) (2024).

In denying Johnson's motion for new trial, which argued this claim of error, the trial court indicated that it had no choice but to allow the jury to be charged on the issue. But as detailed below, it was within the trial court's discretion to preclude the issue from jury consideration.

4

To begin, we agree with Johnson that the parties' joint pretrial order did not raise the issue of the application of OCGA § 51-1-29.5 or its gross negligence standard. In the pretrial order, the parties listed the "issues for determination by the jury. . . ." Johnson identified those issues as: "negligence, causation, and damages (including special damages and general damages)." The defendants identified those issues as:

> (1) Whether Defendant Dr. Everett deviated from the appropriate standard of care under similar conditions and like surrounding circumstances; (2) Whether any act or omission on the part of Defendant Dr. Everett resulted in any harm to Plaintiff; (3) The cause of Mr. Johnson's injury; (4) Whether circumstances surrounding Mr. Johnson's injury were so remote that the injury sustained was unforeseeable; (5) To what damages is the Plaintiff entitled, if any; and (6) If Plaintiff is awarded damages, apportionment of damages according to the percentages of fault as found by the jury.

Under a section titled "[s]pecifications of negligence including applicable Code sections. . . ," Johnson listed "common law negligence; medical malpractice — OCGA § 51-1-27."[2] The defendants denied any liability and identified no additional

---

[2] OCGA § 51-1-27 provides: "A person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of

5

Code sections applicable to the issue of negligence. No party listed OCGA § 51-1-29.5 as an applicable Code section in the pretrial order.

Partway through the trial, however, the defendants asserted that OCGA § 51-1-29.5 governed the issue of their negligence. In a motion for directed verdict after the close of Johnson's case-in-chief, the defendants argued for the first time that under OCGA § 51-1-29.5, Johnson was required to prove gross negligence. The defendants argued that OCGA § 51-1-29.5 applied because, they said, Johnson's expert witness had testified on cross-examination that "that this was an emergency situation[.]" (This is how the defendants characterized the witness's trial testimony when they argued their motion for directed verdict to the trial court. The record does not contain a transcript of the testimony.)

The trial court expressed his belief that it seemed the defendants had "sandbagged" Johnson with their argument under OCGA § 51-1-29.5. Nevertheless, the trial court stated that the jury would have to determine whether the gross negligence standard of OCGA § 51-1-29.5 applied in this case. The trial court denied

such care and skill shall be a tort for which a recovery may be had."

the defendants' motion for directed verdict, finding that Johnson had presented evidence that would authorize a finding of liability under that higher standard.

Accordingly, over Johnson's objection, the trial court instructed the jury that "[i]f Georgia's Emergency Medical Care Statute [OCGA § 51-1-29.5] applies, then the Plaintiff must prove, by clear and convincing evidence, that the Defendant's actions showed gross negligence[,]" and instructed the jury on what constituted gross negligence and under what circumstances OCGA § 51-1-29.5 would apply. A special verdict form asked the jury to determine if Everett provided Johnson with emergency medical care and, if so, to use "the applicable standard based on [that] finding" in finding for either Johnson or the defendants. The jury found that Everett had provided emergency medical care and returned a verdict in favor of the defendants.

Johnson moved for a new trial, challenging among other things the trial court's decision to let the jury consider the application of OCGA § 51-1-29.5. The trial court denied the motion, stating: "If the Court had the authority to preclude the issue [of OCGA § 51-1-29.5] from the jury because it was not identified in the pretrial order, the Court would have considered making this preclusion." But citing language that in actions to which OCGA § 51-1-29.5 applies "the court *shall* instruct the jury to

consider" certain specified matters,[3] OCGA § 51-1-29.5(d) (emphasis supplied), the trial court concluded that he "did not have the authority to deny Defendants' request to charge the jury on the provisions of OCGA § 51-1-29.5, [and] the Motion for New Trial is denied on this ground."

Johnson unsuccessfully moved for reconsideration of the motion-for-new-trial ruling. In denying that motion, the trial court noted that neither side had referenced OCGA § 51-1-29.5 in the pretrial order, but held that

---

[3] The matters that a trial court shall instruct the jury to consider in cases invoking OCGA § 51-1-29.5 are:

(1) Whether the person providing care did or did not have the patient's medical history or was able or unable to obtain a full medical history, including the knowledge of preexisting medical conditions, allergies, and medications;
(2) The presence or lack of a preexisting physician-patient relationship or health care provider-patient relationship;
(3) The circumstances constituting the emergency; and
(4) The circumstances surrounding the delivery of the emergency medical care.

OCGA § 51-1-29.5(d).

[b]ased on the evidence presented at trial OCGA § 51-1-29.5 required the factfinder to consider whether Defendants provided emergency medical care, and if so, whether Plaintiff proved by clear and convincing evidence that Defendants were grossly negligent. Therefore, it would have been error not to charge the jury on OCGA § 51-1-29.5

Johnson argues that this was error because the pretrial order prohibited the jury's consideration of OCGA § 51-1-29.5. We find, however, that whether to amend the pretrial order to permit the issue to be considered was a matter for the trial court's discretion.

A pretrial order "is intended to limit the claims, contentions, defenses, and evidence that will be submitted to the jury thereby narrowing the course of the action, and expediting its resolution." *Dep't of Human Res. v. Phillips*, 268 Ga. 316, 318(1) (486 SE2d 851) (1997). "[W]hen entered, [the pretrial order] controls the subsequent course of the action unless modified at trial to prevent manifest injustice." OCGA § 9-11-16(b). Thus, "it generally is recognized that, unless the pretrial order is modified at or before trial, a party may not advance theories or offer evidence that violate the terms of the pretrial order." *Dep't of Human Res.*, 268 Ga. at 318(1) (citations

omitted). See *Long v. Marion*, 257 Ga. 431, 433(2) (360 SE2d 255) (1987) ("[i]f a claim or issue is omitted from the order, it is waived" (citation and punctuation omitted)). This means that sometimes theories in support of a claim or defenses against a claim will not be allowed at trial, even if they are authorized by law. See, e.g., *Dep't of Human Res.*, 268 Ga. at 318-20(1) (holding that the trial court erred in allowing a judgment that exceeded a statutory cap that the pretrial order stated governed the case, even though other legal authority supported the larger award); *Gardner v. Clark*, 339 Ga. App. 62, 64 n.3 (793 SE2d 439) (2016) (holding that the trial court erred in granting a directed verdict on the ground that there was no evidence that the plaintiff was the administrator of his mother's estate when that issue was not included in the pretrial order); *Williams v. Martin*, 273 Ga. App. 562, 564-65(1) (615 SE2d 774) (2005) (holding that the trial court erred in denying a motion for directed verdict even though jury questions might have existed with regards to a theory asserted by the plaintiff at trial, when the issue had not been raised in the pretrial order); *Ga. Power Co. v. O'Bryant*, 169 Ga. App. 491, 493-95 (313 SE2d 709) (1983) (holding that the trial court did not err in denying a motion to dismiss that was based on a defense not raised in the pretrial order).

A trial court may modify a pretrial order before or during trial at the request of a party. *Dep't of Human Res.*, 268 Ga. at 318(1). A trial court may also do so sua sponte to prevent manifest injustice, a concept that includes consideration of fairness to the party opposing modification. Id. at 319 (1) & n.14. Whether or not to modify a pretrial order to allow consideration of issues not raised in it is a matter for the trial court's discretion. See *Gajaanan Inv. v. Shahil & Sohail Corp.*, 323 Ga. App. 694, 698(1) (747 SE2d 713) (2013) ("The decision whether to disallow a party from raising matters inconsistent with the pretrial order is within the discretion of the trial court." (Citation and punctuation omitted.)); *Whorton v. Boatwright*, 233 Ga. App. 369, 371 (504 SE2d 216) (1998) (holding that in deciding whether to allow amendment of a pretrial order, the trial court "is clothed with a broad discretion").

A pretrial order also may be "deemed modified to conform to evidence that is admitted at trial without objection." *Dep't of Human Res.*, 268 Ga. at 319(1). Again, the principle of fairness applies: "[o]mission of an issue from a pretrial order is not controlling if evidence pertaining to the issue is introduced without objection, *the opposing party is not unfairly surprised*, and the issue is actually litigated." *Eagle Jets v. Atlanta Jet*, 321 Ga. App. 386, 400(8) n. 8 (740 SE2d 439) (2013) (citation and

11

punctuation omitted; emphasis added). And again, "[w]hether an issue has been tried by the implied consent of the parties is a question of fact and a decision on this question is generally considered to be within the sound discretion of the trial court." *Andean Motor Co. v. Mulkey*, 251 Ga. 32, 33(2) (302 SE2d 550) (1983) (citation and punctuation omitted) (discussing the theory of implied consent in the context of amending pleadings to conform to the evidence under OCGA § 9-11-15(b)).

Here, the trial court believed that the language of OCGA § 51-1-29.5 compelled him to allow the jury to consider the applicability of that statute and its gross negligence standard, despite the omission of that issue from the pretrial order. As detailed above, the trial court stated in one of his written orders that the use of compulsory language in the statute — the word "shall" — required the issue to be put to the jury. We disagree with the trial court's reading of the statute. The statute uses that compulsory language to require specific jury charges only *if* OCGA § 51-1-29.5 applies. It states:

> In an action involving a health liability claim arising out of the provision of emergency medical care in a hospital emergency department or obstetrical unit or in a surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department, the court shall instruct the jury to consider, together with all other relevant

> matters[, specific questions of fact relating to the provision of care set
> forth above in footnote 3].

OCGA § 51-1-29.5(d). Nothing in this statutory language required the trial court to amend the pretrial order to allow the jury to decide the threshold issue of OCGA § 51-1-29.5's applicability (and thus the applicability of the gross negligence standard) when the parties had not included the issue in their pretrial order. The trial court retained discretion in that regard.

And we do not agree with the defendants' contention that the pretrial order was automatically amended by trial evidence. The defendants argue that Johnson himself invoked the statute through his description of his symptoms at trial[4] and that he should have known the statute might apply to his action. But the trial court, rather than this court, is in the best position to assess the fairness of modifying the pretrial order mid-trial to allow the issue of OCGA § 51-1-29.5. And the trial court expressed

---

[4] The other trial evidence cited by the defendants, the testimony of Johnson's expert witness, was not included in the appellate record. Although the record contains the trial court's comments on that expert witness's testimony made when the trial court denied the defendants' motion for directed verdict, we do not agree with the defendants' characterization of those comments as an "explicit" finding that the expert witness provided testimony sufficient to show Everett had provided emergency medical care to Johnson.

13

concerns about the fairness of allowing the issue, suggesting that the defendants had "sandbagged" Johnson and stating in one of his written orders that, had he the authority, he "would have considered" precluding the issue because it had not been identified in the pretrial order. Under these circumstances, we decline to hold that the pretrial order was automatically modified in this case.

The trial court's conclusion that he lacked the authority to disallow the issue of OCGA § 51-1-29.5 was a significant legal error that constituted an abuse of discretion. See generally *RBC Global Asset Mgmt. (US) v. Lattimore*, 320 Ga. 77, 77-78(1) (907 SE2d 696) (2024) ("A trial court abuses its discretion when it commits a significant legal error or a clear error as to a material factual finding." (Citation and punctuation omitted.)). By mistaking the scope of his authority to disallow that issue, the trial court failed to exercise his discretion, so we vacate the denial of Johnson's motion for new trial and remand the case to the trial court for reconsideration of the issue. See *Walker v. State*, 292 Ga. 262, 265(2) (737 SE2d 311) (2013) (holding that if a trial court fails to exercise its discretion, an appellate court must vacate and remand the case for the trial court to do so).

3. *Expert testimony*

Johnson claims that the trial court erred in permitting the defendants' expert witness, Dr. William Garrett, to give opinion testimony at trial.

Before trial, Johnson moved in limine to exclude Garrett's testimony, arguing that it did not meet the requirements for admission set forth in OCGA § 24-7-702 ("Rule 702"). The trial court denied Johnson's motion in limine on the grounds that it was untimely and Johnson had not "exercised due diligence" by deposing Garrett. But at trial, before Garrett testified, the trial court revisited the issue.[5] Outside the jury's presence, Garrett made a proffer of his opinion, Johnson conducted a voir dire of him, and the trial court considered Johnson's argument. The trial court ruled that Garrett could give opinion testimony but that he could not, in discussing Johnson's medical history, speculate about the reasons for the actions of other medical providers if those reasons were not expressly set forth in the medical records.

In his motion for new trial, Johnson again challenged the admissibility of Garrett's opinion testimony, and in denying that motion the trial court found that the testimony satisfied Rule 702 and had been properly admitted.

---

[5] For this reason we do not consider Johnson's appellate arguments challenging the trial court's reasons for denying the motion in limine.

(a) *Admissibility under Rule 702*

Rule 702 governs the admissibility of expert opinion testimony. It provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue:

(2) The testimony is based upon sufficient facts or data;

(3) The testimony if the product of reliable principles and methods; and

(4) The expert has reliably applied the principles and methods to the facts of the case.

OCGA § 24-7-702(b).

The trial court acts as the gatekeeper of expert testimony under OCGA § 24-7-702. *Yugueros v. Robles*, 300 Ga. 58, 67 (793 SE2d 42) (2016).

To discharge that responsibility, the trial court must assess three aspects of proposed expert testimony — the qualifications of the expert, the reliability of the testimony, and the relevance of the testimony. We give broad deference to the trial court to fulfill this gatekeeper role. We will not disturb the trial court's determination absent a manifest abuse of discretion.

16

*McWhirter v. Clinkscales*, 377 Ga. App. 826, 828-29(2) (921 SE2d 472) (2025) (citations and punctuation omitted).

Garrett, a neurologist experienced in treating patients with vestibular problems and gait disorders, testified that he reviewed several boxes of Johnson's medical records from which he reached an opinion that Johnson's gait and balance problems were not related to "a vascular condition that could have been caused by Dr. Everett." Instead, Garrett attributed Johnson's problems to a combination of three factors: (1) longstanding, chronic damage to his vestibular process caused by a prescribed antibiotic, gentamicin; (2) "ongoing degenerative disease in [Johnson's] lumbar spine, which affects the nerves going into his legs"; and (3) Johnson's "use of alcohol, which is a selective toxin affecting the vestibular system."

Johnson challenges the reliability of Garrett's testimony. Specifically, he challenges an aspect of the opinion that Garrett expressed in his proffer: that Johnson suffers from cerebellar ataxia, a brain condition associated with alcohol use. Johnson argues that this was not based on facts in evidence, which he alleges showed only that at an earlier point in time Johnson's medical providers had identified cerebellar ataxia

as a possibility, during the process of differential diagnosis, but that cerebellar ataxia subsequently was ruled out by an MRI.

Pretermitting whether the facts in evidence would support an opinion that Johnson suffers from cerebellar ataxia, Garrett did not actually express that specific opinion to the jury. (This may have been due to the limitations the trial court placed on Garrett's testimony, discussed above.) Instead, Garrett opined more generally that the medical records showed that Johnson has a longstanding vestibular problem that has been worsening over time, that the worsening of his problem predated the medical care he received from Everett, and that Johnson's regular use of alcohol in any quantity was a probable cause of that worsening. Indeed, when on cross-examination Johnson's counsel stated, "I understand your opinion is that he has cerebellar ataxia now," Garrett replied, "My opinion is, is that he has a vestibular process that has worsened over time, and that one of the — that the most likely ideology [sic] for the worsening of his vestibular process is his chronic alcohol use."

The trial court did not abuse his discretion in permitting this opinion or in denying Garrett's motion for new trial on this ground. "Reliability is a flexible, case-specific inquiry, and a trial court has considerable leeway in deciding how to assess the

reliability of an expert's opinion. In doing so, the court must focus on the expert's principles and methodology, not on the conclusions they generate." *McWhirter*, 377 Ga. App. at 829(2) (citations and punctuation omitted).

Garrett testified that "determining the etiology of gait dysfunction … solidly resides in [his] specialty." He reviewed medical records that set forth Johnson's history of vestibular problems and included notations that Johnson consumed alcohol regularly, at the frequency of a glass of wine a night. From that information, Garrett concluded that Johnson's alcohol use was a factor in the worsening of his symptoms, rebutting the claim that Everett's alleged negligence caused the worsening. See *Haskins v. Ga. Neurosurgical Inst.*, 355 Ga. App. 781, 787(5) (845 SE2d 770) (2020) (holding that "[d]efendants do not bear the burden of proving causation" and "may instead provide expert testimony suggesting alternative causes for the plaintiff's injury in order to rebut the plaintiff's specific causation testimony" (citation and punctuation omitted)). Even if some of this opinion could be deemed speculative, as Johnson argues, that does not prohibit its admission; "the appropriate standard for assessing the admissibility of the opinion of an expert is not whether it is speculative or conjectural to some degree, but whether it is wholly so[,]" *McWhirter*, 377 Ga. App.

19

at 830(2) (citation and punctuation omitted), and Garrett's opinion was not wholly speculative. "[W]hen an expert's opinion is based partially on speculation, this goes to the weight of the testimony rather than its admissibility." *Johnson v. Terminal Inv. Corp.*, 374 Ga. App. 629, 635(1) (913 SE2d 14) (2025) (citation and punctuation omitted). So to the extent Johnson challenges the correctness of Garrett's conclusion that the level of alcohol consumption documented in Johnson's medical records could have worsened his vestibular process (given his history of vestibular problems), that was an issue for cross-examination, not a reason to prohibit the testimony. And the record shows that Johnson's counsel extensively cross-examined Garrett on that conclusion.

(b) *Timeliness of the defendants' pretrial disclosure of the opinion*

To the extent Johnson asserts that the trial court should have prohibited Garrett's opinion because the defendants' pretrial disclosure of it was untimely, he has not shown error by the appellate record. When that issue was raised at trial, the trial court stated that he had "already ruled on the motion to exclude about the timeliness." The trial court's ruling apparently had occurred in connection with a pretrial hearing. The appellate record does not contain a transcript of that hearing, and

we must presume that the evidence presented at the hearing supported the trial court's ruling on the timeliness of the defendants' disclosure. *Gallemore v. White*, 303 Ga. 209, 210(1) (811 SE2d 315) (2018).

4. *Complaint in another action*

Johnson argues that the trial court erred by admitting into evidence a copy of a complaint in another action and allowing it to go out with the jury. In that 1997 complaint, Johnson alleged that a hospital in another state had negligently administered to him the antibiotic gentamicin, causing him permanent injuries including dizziness, imbalance, and vertigo. He has not shown that he preserved this claim of error for appellate review.

The record we have on appeal shows that, during Johnson's cross-examination, the defendants' counsel identified the complaint as an exhibit and read portions of it aloud. Johnson's counsel objected "to the admission of this exhibit and the reading of any of it in open court based on relevance and lack of probative value." After the trial court overruled the objection, Johnson's counsel then stated that he had "another ground ... for exclusion of this exhibit." The trial court pointed out that the defendants' counsel had "not moved to tender the exhibit." Johnson's counsel

21

replied, "Understood. I'll wait." The exhibit was not tendered into evidence at any other point during the portion of trial covered by this transcript excerpt. Instead, the record states that it was admitted into evidence the following day, during a portion of the trial for which we do not have a transcript. Consequently, the limited appellate record does not show whether or not Johnson objected to the admission of the exhibit at the time of its tender.

To preserve this claim of error for appellate review, Johnson was required to make a contemporaneous objection at the time the defendants tendered the exhibit for admission. See *In re Estate of Samuel*, A25A1573, slip op. at 6-7(2) (Ga. App. Mar. 9, 2026) (2026 Ga. App. LEXIS 142). Because the record on appeal does not show whether or not Johnson did so, he has not shown error by the record. See generally *Thorsen v. Saber*, 288 Ga. 18, 19(2) (701 SE2d 133) (2010) ("the burden is upon the party asserting error to show error by the record" (citation and punctuation omitted)).

To the extent Johnson also seeks to challenge the trial court's decision to allow the defendants to question him about the complaint on cross-examination, and in doing so to read parts of it aloud, he has not shown an abuse of discretion. "Although evidence of prior personal injury actions generally is not relevant, evidence concerning

22

a plaintiff's other injuries may be admissible to show that the injuries currently at issue are not the result of the defendant's alleged negligence." *Kilday v. Kennestone Physicians Ctr.*, 296 Ga. App. 818, 820(1) (676 SE2d 271) (2009) (citation and punctuation omitted). See also *Goforth v. Wigley*, 178 Ga. App. 558, 560(2) (343 SE2d 788) (1986) ("evidence of prior claims for injuries arising from another unrelated incident may be admissible to prove the cause and extent of injuries in the instant action").

*Judgment vacated and case remanded with direction. Watkins and Padgett, JJ., concur.*